IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 7 |
| MARVELAY, LLC d/b/a THRILLANT, | : | |
| SPOT RESERVATION, AND | : | |
| RUSHCUBE, | : | |
| | : | CASE NO. 18-69019-LRC |
| Debtor. | : | |
| | : | |
| MARTHA A. MILLER, Chapter 7 Trustee | : | |
| for MARVELAY, LLC d/b/a THRILLANT, | : | |
| SPOT RESERVATION, AND RUSHCUBE, | : | |
| | : | |
| Plaintiff. | : | |
| | : | |
| v. | : | ADVERSARY PROCEEDING |
| | : | NO. _____ |
| CARY QUATTROCCHI, ASTA QUATTROCCHI,| : | |
| CHRIS SURHOFF f/k/a CHRIS QUATTROCCHI, | : | |
| ERRAN FAIN YEARTY, LISA STRAWN, | : | |
| YVONNE CROOKS CLINE, JOHN | : | |
| QUATTROCCHI, DARLENE A. ZDROJEWSKI, | : | |
| 4DZ, LLC (d/b/a SKYDIVE ALABAMA, | : | |
| SKYDIVE GEORGIA, SKYDIVE TENNESSEE, | : | |
| SKYLANDER/SOUTH CAROLINA | : | |
| SKYDIVING); SDG, LLC (d/b/a SKYDIVE | : | |
| ALABAMA, SKYDIVE GEORGIA, SKYDIVE | : | |
| TENNESSEE), WIND FAVOR, LLC (d/b/a | : | |
| SKYDIVE PHILADELPHIA), SDPA, LLC (d/b/a | : | |
| SKYDIVE PHILADELPHIA), SOUTH | : | |
| CAROLINA SKYDIVING, LLC (d/b/a SC | : | |
| SKYDIVING, SOUTH CAROLINA | : | |
| SKYDIVING), EWOK, LLC, FALKEN, LLC | : | |
| (d/b/a TRIDENT TECHNOLOGY), CAMORIN, | : | |
| LLC, GRANTER MEDIA, INC, BILATERAL, | : | |
| LLC (d/b/a BILATERAL MARKETING), THIRTY | : | |
| RED, LLC, ALBRIGHT, LLC, SONIC AIR, LLC, | : | |
| METROPOLITAN CLASSIC CARS, INC., and | : | |
| FIRM FOUNDATIONS, INC. | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

COMES NOW Martha A. Miller, as the Chapter 7 Trustee ("Trustee" or "Plaintiff")
for the bankruptcy estate of Marvelay, LLC ("Marvelay" or "Debtor") and plaintiff herein,
and files this Complaint against: (i) Cary Quattrocchi, Asta Quattrocchi, Chris Surhoff f/k/a
Chris Quattrocchi, Erran Fain Yearty, Lisa Strawn, and Yvonne Crooks Cline (collectively,
the "Insider Defendants"); (ii) John Quattrocchi and Darlene A. Zdrojewski (collectively the
"Related Insider Defendants"); (iii) 4DZ, LLC (d/b/a Skydive Alabama, Skydive Georgia,
Skydive Tennessee, Skylander/South Carolina Skydiving), SDG, LLC (d/b/a Skydive
Alabama, Skydive Georgia, Skydive Tennessee), Wind Favor, LLC (d/b/a Skydive
Philadelphia), SDPA, LLC (d/b/a Skydive Philadelphia), South Carolina Skydiving, LLC
(d/b/a SC Skydiving, South Carolina Skydiving) (collectively, the "Affiliated Drop Zone
Defendants"); (iv) Ewok, LLC, Falken, LLC (d/b/a Trident Technology), Camorin, LLC,
Granter Media, Inc, Bilateral, LLC (d/b/a Bilateral Marketing), Thirty Red, LLC, Albright,
LLC, and Sonic Air, LLC (collectively, the "Affiliated Entity Defendants"); (v) Metropolitan
Classic Cars, Inc., and Firm Foundations, Inc. (the "Thirty Red Transferee Defendants") (the
Insider Defendants, Related Insider Defendants, Affiliated Drop Zone Defendants, and
Affiliated Entity Defendants, are collectively referred to herein as the "Defendants," which
does not include the Thirty Red Transferee Defendants). In support of the Complaint, Plaintiff
states as follows:

### NATURE OF THE PROCEEDING

1.      This adversary proceeding arises from a highly profitable and illegal scheme
masterminded by Cary Quattrocchi designed to defraud and deceive consumers into
purchasing adventure and leisure experiences through deceptive, misleading and fraudulent
marketing practices. A significant majority of Marvelay's consumers were victims of the

2

scheme as a result of the scheme's willful and systematic misappropriation of intellectual property rights of locally based businesses through the use of sales practices and thousands of websites designed to trick the consumer into believing they were making a purchase from an actual operating business as opposed to making a purchase through an agent with a substantial markup. Over the course of the scheme, there were hundreds of thousands of consumer victims, at least 60,000 of whom were victimized within the four years before the Petition Date (as defined herein), and hundreds of small business victims, resulting in tens of millions of dollars of claims against Marvelay.

2.      Cary Quattrocchi, his family members, and especially close friends and entities which they dominate and control, either directly or indirectly, have engaged and continue to engage in a series of fraudulent transfers and deceptions, including the systematic concealment and destruction of business records, as an integral part of the scheme so that they may continue to enrich themselves and escape liability from the victims of their illegal conduct. There is a decades long pattern of fraudulently conveying assets to newly created entities, using different trade names, changing the names of owners, managers, members and officers, and concealing the actual beneficial owner or owners of the entities and assets used in the scheme to avoid liability from existing litigation and the taint of their illegal conduct.

3.      Cary Quattrocchi, his family members, and especially close friends have personally benefited and continue to benefit from the successful and profitable operation of the illegal scheme that has been in existence since late 2002. For example, in February 2015, Cary Quattrocchi and an entity named Albright, LLC, purchased a lakefront home for $700,000.00 on Lake Lanier and shortly thereafter proceeded to spend at least $117,112.72 improving the property. On December 18, 2018, shortly after being released from the Cobb

County jail after being incarcerated for 30 days for contempt as a result of willful violations of the Cobb County Superior Court's October 11, 2018 order entered in Second Georgia Action (as defined herein ), Erran Fain Yearty ("Erran Yearty") travelled to Hawaii for a luxury vacation.

4.      Cary Quattrocchi, his family members, and especially close friends and entities which they dominate and control enriched themselves by retaining millions of dollars in revenues generated by the operation of the call center located at 2601 Summer St., Kennesaw, Georgia (formerly 2593 Kennesaw Due West Road, Kennesaw, Georgia)(the "Due West Property") and by related operations and maintenance of websites, only remitting what was necessary to pay employees operating the call center and maintaining the websites for the benefit of the Affiliated Entity Defendants and other entities. Cary Quattrocchi, his family members, and especially close friends continue to operate skydiving drop zones and internet marketing companies, all of which received and continue to receive substantial benefit as a result of not having to pay anything for the operations and advancement of their businesses for many years.

5.      In connection with pre-petition litigation, Erran Yearty and Asta Quattrocchi, the managers and members of Marvelay, were unable and unwilling to provide any documents or explanation regarding the detailed terms of transactions between and involving Marvelay and affiliated insider entities who have received millions of dollars in transfers in the 4 years prior to Petition Date (the "Relevant Period").

6.      As of the date of this Complaint, the Trustee has identified transfers made by Marvelay within the Relevant Period which have benefitted, directly or indirectly, the Defendants. Many of these funds were transferred to other entities controlled by these

Defendants or to other family members, some of whom are named herein as subsequent transferees.

7.     This adversary proceeding is brought pursuant to sections 105(a), 502(d), 510(c), 544, 547, 548(a), 550(a) and 551 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), the Georgia Uniform Voidable Transactions Act §§ 18-2-70 *et seq.* ("UVTA"), and other applicable law for avoidance and recovery of preferences, fraudulent conveyances, and subsequent transfer of such preferences and fraudulent conveyances, unjust enrichment, quantum meruit, money had and received, and other damages. In addition, this adversary proceeding seeks equitable remedies in the form of alter ego, piercing the veil and substantive consolidation under applicable law. The Trustee seeks to avoid transfers and preserve and recover property for the benefit of Marvelay's estate, defrauded customers, and creditors, including those whose intellectual property was infringed on.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334(b) and the Standing Order of Reference of the United States District Court for the Northern District of Georgia. This is a core proceeding under 28 U.S.C. §157(b)(2)(E)(F)(H) & (O).

9.     Venue is proper in this district in accordance with 28 U.S.C. § 1409(a).

10.     On November 9, 2018 (the "Petition Date"), Marvelay filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, commencing Case No. 18-68019 (the "Marvelay Bankruptcy Case").

11.     The Trustee was appointed Chapter 7 trustee for Marvelay on or about November 13, 2018, and became permanent trustee following the section 341 meeting of creditors on December 17, 2018.

## THE DEFENDANTS

### The Insider Defendants

12.     Defendant Cary Quattrocchi is an individual resident of the State of Georgia and is subject to the jurisdiction and venue of this Court. Defendant Cary Quattrocchi is the father of Asta Quattrocchi, a manager of the Debtor. Defendant Cary Quattrocchi is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Service may be made under Federal Rule of Bankruptcy Procedure 7004 upon Defendant Cary Quattrocchi at his dwelling or usual place of abode at 100 Hopewell Grove Drive, Atlanta, Georgia 30004, or by such other manner as may be proper thereunder.

13.     Defendant Asta Quattrocchi is an individual resident of the State of Georgia and is subject to the jurisdiction and venue of this Court. Defendant Asta Quattrocchi is a manager of the Debtor. Defendant Asta Quattrocchi is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Service may be made under Federal Rule of Bankruptcy Procedure 7004 upon Defendant Asta Quattrocchi at his dwelling or usual place of abode at 2460 Due West Circle, NW, Kennesaw, Georgia 30152, or by such other manner as may be proper thereunder.

14.     Defendant Chris Surhoff f/k/a Chris Quattrocchi ("Chris Surhoff") is an individual resident of the State of Georgia and is subject to the jurisdiction and venue of this Court. Defendant Chris Surhoff is the brother of Cary Quattrocchi, and uncle of Asta Quattrocchi, a manager of the Debtor. Defendant Chris Surhoff is an "Insider" as defined in

Section 101(31) of the Bankruptcy Code. Service may be made under Federal Rule of Bankruptcy Procedure 7004 upon Defendant Chris Surhoff at his dwelling or usual place of abode at 3855 Sunview Drive, Acworth, Georgia 30101, or by such other manner as may be proper thereunder.

15.     Defendant Erran Yearty is an individual resident of the State of Georgia and is subject to the jurisdiction and venue of this Court. Defendant Erran Yearty is a manager and member of the Debtor. Defendant Erran Yearty is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Service may be made under Federal Rule of Bankruptcy Procedure 7004 upon Defendant Erran Yearty at his dwelling or usual place of abode at 4825 Thicket Path, Acworth, Georgia 30102, or by such other manner as may be proper thereunder.

16.     Defendant Lisa Strawn is an individual resident of the State of Georgia and is subject to the jurisdiction and venue of this Court. Upon information and belief, Defendant Lisa Strawn is the unmarried domestic partner of Cary Quattrocchi. Defendant Lisa Strawn is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Service may be made under Federal Rule of Bankruptcy Procedure 7004 upon Defendant Lisa Strawn at her dwelling or usual place of abode at 100 Hopewell Grove Drive, Atlanta, Georgia 30004, or by such other manner as may be proper thereunder.

17.     Defendant Yvonne Crooks Cline is an individual resident of the State of Georgia and is subject to the jurisdiction and venue of this Court. Upon information and belief, Defendant Yvonne Crooks Cline was the girlfriend of Cary Quattrocchi. Defendant Yvonne Crooks Cline is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Service may be made under Federal Rule of Bankruptcy Procedure 7004 upon Defendant Yvonne

Crooks Cline at her dwelling or usual place of abode at 1732 Pamela Circle, SW Marietta, Georgia 30008, or by such other manner as may be proper thereunder.

<u>The Related Insider Defendants</u>

18.    Defendant John Quattrocchi is an individual resident of the State of Georgia and is subject to the jurisdiction and venue of this Court. Defendant John Quattrocchi is the father of Cary Quattrocchi and the grandfather of Asta Quattrocchi, a manager of the Debtor. Defendant John Quattrocchi is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Service may be made under Federal Rule of Bankruptcy Procedure 7004 upon Defendant John Quattrocchi at his dwelling or usual place of abode at 4809 Village North Ct., Dunwoody, Georgia 30338, or by such other manner as may be proper thereunder.

19.    Defendant Darlene A. Zdrojewski is an individual resident of the State of Pennsylvania and is subject to the jurisdiction and venue of this Court. Defendant Darlene Zdrojewski is the mother of Cary Quattrocchi and the grandmother of Asta Quattrocchi, a manager of the Debtor. Defendant Darlene Zdrojewski is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Service may be made under Federal Rule of Bankruptcy Procedure 7004 upon Defendant Darlene Zdrojewski at her dwelling or usual place of abode at 5173 Merganser Way, Bensalem, PA 19020, or by such other manner as may be proper thereunder.

<u>The Affiliated Drop Zone Defendants</u>

20.    Defendant Wind Favor, LLC d/b/a Skydive Philadelphia ("Wind Favor") is a Georgia limited liability company formed under the laws of the State of Georgia on May 7, 2010. Upon information and belief, until August 2016, Defendant Wind Favor was an operating entity involved in the Skydive Philadelphia business located at Pennridge Airport

at 1100 N. Ridge Road, Perkasie, PA 18944. Defendant Wind Favor is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Upon information and belief, Defendant Wind Favor transferred its assets to SDPA, LLC, in August 2016. Defendant Wind Favor may be served under Federal Rule of Bankruptcy Procedure 7004 by serving its registered agent, Jennifer E. Simpson, Emerson Overlook, 326 Roswell Street, Suite 100, Marietta, GA 30060, or by such other manner as may be proper thereunder.

21.    Defendant SDPA, LLC d/b/a Skydive Philadelphia ("SDPA") is a Pennsylvania limited liability company formed under the laws of the State of Pennsylvania on August 4, 2016. Upon information and belief, SDPA is an operating entity involved in the Skydive Philadelphia business whose principal place of business is located at Pennridge Airport at 1100 N. Ridge Road, Perkasie, PA 18944. Defendant SDPA is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Defendant SDPA may be served under Federal Rule of Bankruptcy Procedure 7004 at the following address or by such other manner as may be proper thereunder: 1100 North Ridge Rd Perkasie Bucks PA 18944.

22.    Defendant 4DZ, LLC d/b/a Skydive Alabama, Skydive Georgia, Skydive Tennessee, Skylander/South Carolina Skydiving ("4DZ") is a Delaware limited liability company formed under the laws of the State of Delaware on December 19, 2014 and qualified to do business as a foreign limited liability company in Alabama on August 17, 2015. Upon information and belief, until sometime in 2016, Defendant 4DZ was an operating entity involved in the Skydive Georgia and Skydive Tennessee business located at 493 Airport Rd #5049 Cedartown, GA 30125, Skydive Alabama business located at 231 County Road 1360 Vinemont, Alabama 35179, and Skylander d/b/a South Carolina Skydiving business located at 11920 Gapway Road in Andrews, South Carolina 29510. Upon information and belief,

9

substantially all of Defendant 4DZ's income was derived from consumers who booked their skydives through Marvelay using vouchers or gift certificates based on prices set by Marvelay, the Insider Defendants, or Affiliated Entity Defendants which prices were not set in an arm's length negotiation. 4DZ is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Upon information and belief, Defendant 4DZ transferred its assets to SDG, LLC and South Carolina Skydiving, LLC in August 2016. Defendant 4DZ may be served under Federal Rule of Bankruptcy Procedure 7004 by service upon its registered agent Paul Rossouw at 510 Melissa Circle, Hartselle, Alabama 35640, or by such other manner as may be proper thereunder.

23.     Defendant SDG, LLC d/b/a Skydive Alabama, Skydive Georgia, Skydive Tennessee ("SDG") is a Georgia limited liability company that was organized by Defendant Lisa Strawn and formed under the laws of the State of Georgia on July 6, 2016. Upon information and belief, SDG is involved in the Skydive Georgia and Skydive Tennessee business located at 493 Airport Rd #5049 Cedartown, Georgia 30125 and Skydive Alabama Business located at 231 County Road 1360 Vinemont, Alabama 35179. Defendant SDG is subject to the jurisdiction of this Court. Defendant SDG is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Upon information and belief, until shortly before the Petition Date substantially all of Defendant SDG's income was derived from consumers who booked their skydive through Marvelay using vouchers or gift certificates based on prices set by Marvelay, the Insider Defendants, or Affiliated Entity Defendants which prices were not set in an arm's length negotiation. Upon information and belief, substantially all of Defendant SDG's income after the Petition Date continues to be derived from consumers who booked their skydive through marketing mechanisms controlled by and managed by one or more of

the Insider Defendants or Affiliated Entity Defendants at prices which are not set in an arm's length negotiation. Under Federal Rule of Bankruptcy Procedure 7004, service may be made upon Defendant SDG by serving its Registered Agent, Hans Paulsen, 493 Airport Road, Cedartown, Georgia 30153, or by such other manner as may be proper thereunder.

24.    Defendant South Carolina Skydiving, LLC d/b/a SC Skydiving, Skydive South Carolina ("SC Skydiving") is a South Carolina limited liability company formed under the laws of the State of South Carolina on July 6, 2016. Upon information and belief, SC Skydiving is involved in the South Carolina Skydiving business located at 11920 Gapway Road in Andrews, SC 29510. Defendant SC Skydiving is subject to the jurisdiction of this Court. Defendant SC Skydiving is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Upon information and belief, until shortly before the Petition Date, substantially all of Defendant SC Skydiving's income was derived from consumers who booked their skydives through Marvelay using vouchers or gift certificates based on prices set by Marvelay, the Insider Defendants, or Affiliated Entity Defendants which prices were not set in an arm's length negotiation. Upon information and belief, substantially all of Defendant SC Skydiving's income after the Petition Date continues to be derived from consumers who booked their skydives through marketing mechanisms controlled by and managed by one or more of the Insider Defendants or Affiliated Entity Defendants at prices which are not set in an arm's length negotiation. Under Federal Rule of Bankruptcy Procedure 7004, service may be made upon Defendant SC Skydiving by serving its registered agent Michael L. Stone, Jr. at 6156 Highmarket Street, Georgetown, South Carolina 29440, or by such other manner as may be proper thereunder.

The Affiliated Entity Defendants

25.     Defendant EWOK, LLC ("EWOK") is a Delaware limited liability company that was organized by Asta Quattrocchi and formed under the laws of the State of Delaware on January 13, 2012 and is registered to do business in Georgia as a Foreign Limited Liability Company. Defendant EWOK is subject to the jurisdiction of this Court. Asta Quattrocchi is the manager of EWOK. EWOK is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Under Federal Rule of Bankruptcy Procedure 7004, service may be made upon Defendant EWOK by serving its Registered Agent, CT Corporation System at 209 S. Culver Street, Lawrenceville, Georgia 30144, or by such other manner as may be proper thereunder.

26.     Defendant Falken, LLC d/b/a Trident Technology ("Falken") is a Georgia limited liability company that was organized by Asta Quattrocchi and formed under the laws of the State of Georgia on August 2, 2011. Defendant Falken is subject to the jurisdiction of this Court. Upon information and belief, Asta Quattrocchi is a manager of Falken. Upon information and belief, Falken is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Under Federal Rule of Bankruptcy Procedure 7004, service may be made upon Falken by serving its manager Asta Quattrocchi at 2460 Due West Circle, NW, Kennesaw, Georgia 30152, or by such other manner as may be proper thereunder.

27.     Defendant Camorin, LLC ("Camorin") is a Wyoming limited liability company that was organized by Cary Quattrocchi and formed under the laws of the State of Wyoming on February 6, 2012. On February 13, 2020, the State of Georgia issued a Certificate of Authority authorizing Camorin to transact business as a Foreign Limited Liability Company in Georgia. Defendant Camorin is subject to the jurisdiction of this Court.

Cary Quattrocchi is a manager of Camorin. Camorin is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Under Federal Rule of Bankruptcy Procedure 7004, service may be made upon Defendant Camorin by serving its Registered Agent, Cary Quattrocchi at 100 Hopewell Grove Drive, Atlanta, Georgia 30004, or by such other manner as may be proper thereunder.

28.     Defendant Granter Media, Inc. ("Granter Media") is a Georgia Corporation that was organized by Cary Quattrocchi and formed under the laws of the State of Georgia on February 23, 2006. Defendant Granter Media is subject to the jurisdiction of this Court. Cary Quattrocchi is the Chief Executive Officer of Granter Media. Granter Media is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Under Federal Rule of Bankruptcy Procedure 7004, service may be made upon Defendant Granter Media serving its Registered Agent, Cary Quattrocchi at 100 Hopewell Grove Drive, Atlanta, Georgia 30004, or by such other manner as may be proper thereunder.

29.     Defendant Bilateral, LLC d/b/a Bilateral Marketing ("Bilateral") is a Georgia Limited Liability Company that was organized by Asta Quattrocchi and formed under the laws of the State of Georgia on December 21, 2010. Defendant Bilateral is subject to the jurisdiction of this Court. Upon information and belief, Asta Quattrocchi is the manager of Bilateral. Bilateral is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Under Federal Rule of Bankruptcy Procedure 7004, service may be made upon Defendant Bilateral by serving its manager Asta Quattrocchi at 2460 Due West Circle, NW, Kennesaw, Georgia 30152, or by such other manner as may be proper thereunder.

30.     Defendant Thirty Red, LLC ("Thirty Red") is a Delaware Limited Liability Company formed under the laws of the State of Delaware on September 22, 2011. Defendant

Thirty Red is subject to the jurisdiction of this Court. Upon information and belief, Thirty Red is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Under Federal Rule of Bankruptcy Procedure 7004, service may be made upon Defendant Thirty Red by serving its registered agent, National Registered Agents Inc., 1209 Orange Street, Wilmington, Delaware 19801, or by such other manner as may be proper thereunder.

31.    Defendant Albright, LLC ("Albright") is a Delaware Limited Liability Company that was formed under the laws of the State of Delaware on January 16, 2013. Defendant Albright is subject to the jurisdiction of this Court. Defendant Albright holds title to 424 Brookwood Drive West, Dawsonville, Georgia 30534, jointly with Cary Quattrocchi. Upon information and belief, Albright is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Under Federal Rule of Bankruptcy Procedure 7004, service may be made upon Defendant Albright by serving its registered agent, Incorp Services Inc., 919 North Market Street, Suite 950, Wilmington, Delaware 19801, or by such other as may be proper thereunder.

32.    Defendant Sonic Air, LLC ("Sonic Air") is a Georgia Limited Liability Company that was formed under the laws of the State of Georgia on April 19, 2010. Defendant Sonic Air is subject to the jurisdiction of this Court. Upon information and belief, Sonic Air is an "Insider" as defined in Section 101(31) of the Bankruptcy Code. Under Federal Rule of Bankruptcy Procedure 7004, service may be made upon Defendant Sonic Air by serving its registered agent, Jennifer E. Simpson, Emerson Overlook, 326 Roswell Street, Suite 100, Marietta, Georgia 30060, or by such other as may be proper thereunder.

<u>Thirty Red Transferee Defendants</u>

33.    Defendant Metropolitan Classic Cars Inc. ("Metropolitan Classic") is Georgia Corporation that was formed under the laws of the State of Georgia on February 5, 1998. Defendant Metropolitan Classic is subject to the jurisdiction of this Court. Under Federal Rule of Bankruptcy Procedure 7004, service may be made upon Defendant Metropolitan Classic at the following address or by such other manner as may be proper thereunder: Richard A. Coleman, 3340 Peachtree Road, NE, Suite 2140, Atlanta, Georgia 30326.

34.    Defendant Firm Foundations, Inc. ("Firm Foundations") is Georgia Corporation that was formed under the laws of the State of Georgia on December 4, 1996. Defendant Firm Foundations is subject to the jurisdiction of this Court. Under Federal Rule of Bankruptcy Procedure 7004, service may be made upon Defendant Firm Foundations at the following address or by such other manner as may be proper thereunder: David S. Gaitan Jr., 1455 South Richland Creek Road, Sugar Hill, Georgia 30518.

SCHEME TO TRANSFER ASSETS<br><u>TO HINDER, DELAY AND DEFRAUD CREDITORS</u>

35.    Beginning in late 2002, Marvelay's predecessors, insiders, and affiliates (in existence and thereafter formed), including Cary Quattrocchi, Benny W. Butler ("Butler"), USSO, LLC ("USSO"), IGOVincent, Inc. ("IGOVincent"), Tapura, Inc. d/b/a Thrillplanet.com ("Tapura"), Adventure Sports, LLC ("Adventure Sports"), Atlanta SC, Inc. ("Atlanta SC"), CASC, Inc. ("CASC"), and Tandora, Inc. ("Tandora") engaged in a scheme using thousands of Internet websites designed to deceive and mislead consumers and competitors.

<u>Arizona Action and First Georgia Action</u>

36.    On August 30, 2005, Skydive Arizona, Inc. ("Skydive Arizona") brought a Lanham Act lawsuit against Cary Quattrocchi, Butler, IGOVincent, USSO, CASC, and Atlanta SC

15

(collectively, the "Arizona Action Defendants") in the United States District Court for the District of Arizona (the "Arizona District Court") asserting claims of (1) False Designation or Origin and Unfair Competition, under Section 43(a) of the Lanham Act, 15 U.S.C. § 1115(a) (false advertising), (2) Trademark Infringement, under 15 U.S.C. § 1125(a) (trademark infringement), and (3) False Designation of Origin and Unfair Competition, under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d) (cybersquatting) (the "Arizona Action").

37.    On May 24, 2007, the State of Georgia sued Cary Quattrocchi, Butler, USSO, and Atlanta SC for violating the Georgia Fair Business Practices Act of 1975 in the Superior Court of Fulton County, Georgia, Civil Action Case No. 2007CV134640 (the "First Georgia Action").

38.    On August 18, 2008, in the First Georgia Action, Cary Quattrocchi, Butler, USSO, and Atlanta SC entered into a consent order, along with non-parties IGOVincent, Tapura, Adventure Sports, CASC, and Tandora who were added by agreement, wherein they agreed to be enjoined from violating the Georgia Fair Business Practices Act of 1975.

39.    On October 2, 2009, a jury in the Arizona Action awarded $6.6 million to Skydive Arizona against the Arizona Action Defendants.

40.    On March 31, 2010, the Arizona District Court issued an Order in the Arizona Action doubling the jury's award of actual damages and awarding Skydive Arizona attorney's fees.

41.    On April 16, 2010, Skydive Arizona obtained a judgment of more than $10 million in the Arizona Action against the Arizona Action Defendants.

42.    Within one month of the entry of the judgment in the Arizona Action against the Arizona Action Defendants, Defendant Yvonne Crooks Cline formed three companies: Parabolic, LLC; Wind Favor; and Sonic Air.

43.    In May 2010, each of these three companies assumed the operations of skydiving facilities that Cary Quattrocchi had previously owned for a number of years. Specifically, Wind Favor took over Cary Quattrocchi's skydiving center in Pennsylvania that was previously operated by Tandora. Sonic Air took over Quattrocchi's skydiving center in Tennessee. Parabolic took over Quattrocchi's skydiving center in Cedartown, Georgia that was previously operated by Atlanta SC. Each of Yvonne Crooks Cline's businesses operated in the same location as Cary Quattrocchi's businesses did and with many of the same employees. Yvonne Crooks Cline never visited the skydiving centers in Pennsylvania and Tennessee and rarely visited the skydiving center in Cedartown, Georgia. Yvonne Crooks Cline did not receive any compensation from any of these three companies, even when she was unemployed and forced to rely on her credit cards until she could find employment.

<u>2011 Fraudulent Transfer Case</u>

44.    On July 14, 2011, Skydive Arizona sued Yvonne Crooks Cline, Darlene A. Zdrojewski, Blue Abacus, Inc., Cary Quattrocchi, Tandora, USPO, LLC, Granter Media, Inc., Clearlane, Inc., Sonic Air, LLC, Plutian LLC, Cascadian LLC, Headband, LLC, Rason, LLC, Parabolic, LLC, Tetra Helios, LLC, Adventure Sports, USSO, Atlanta SC, CASC, IGOVincent, Lilliam Dejesus, Charles "Chuck" Owen, John Tyler Lawson (collectively, the "2011 Fraudulent Transfer Named Defendants") and Doe Companies 1-10, in the Superior Court of Fulton County, Georgia, Case No. 2011CV203219 (the "2011 Fraudulent Transfer Case"), asserting fraudulent transfer claims against all defendants, a request to pierce the corporate veil as to the corporate defendants, and a civil conspiracy claim against defendants Yvonne Crooks Cline, Lilliam DeJesus, Charles "Chuck" Owen, and John Tyler Lawson. On

March 12, 2012, following an appeal to the Ninth Circuit, the judgment in the Arizona Action was reduced by $3.5 million back to $6.6 million.

45.     Less than one month later, on April 2, 2012, Marvelay was formed as a Delaware limited liability company.

46.     By order entered November 28, 2012, the Georgia Fulton County Superior Court appointed Nesbit Kendrick as a special master ("Special Master") in the 2011 Fraudulent Transfer Case.

47.     On January 7, 2013, the Special Master entered an order (the "Receivership Order") in the 2011 Fraudulent Transfer Case appointing a receiver to take over intellectual, real and other business properties and processes owned, leased and/or maintained and used by each of the 2011 Fraudulent Transfer Named Defendants and "John Doe" Defendants Asta Quattrocchi, Bilateral, LLC, and Camorin, LLC, in the conduct of a business or businesses. The assets subject to the Receivership Order included:

(a)     improved real property located at the Due West Office;

(b)     phone numbers leased from various providers used in the operation of a call center located at or managed from the Due West Office;

(c)     over a thousand internet web domains licensed to various companies by various internet domain providers;

(d)     credit card merchant account(s) and other banking accounts;

(e)     accounts receivable, deposits, cash, lines of credit and other working capital;

(f)     contracts and other agreements with internet advertisers such as Groupon.com;

(g)     computers, copiers, furniture and other business equipment located at the Due West Office or otherwise used in connection with any of the businesses subject to the Receivership Order;

(h)     accounting and other business records located at the Due West Office or otherwise maintained in connection with any of the businesses subject to the Receivership Order; and

(i)     all other tangible and intangible property used by any entity doing business at the Due West Office.

48.     Also, on January 7, 2013, IGOVincent, one of the 2011 Fraudulent Transfer Named Defendants, filed a petition under Chapter 7 of the Bankruptcy Code, commencing Case No. 13-50396, in the United States Bankruptcy Court for the Northern District of Georgia.

49.     Also, on January 7, 2013, CASC, one of the 2011 Fraudulent Transfer Named Defendants, filed a petition under Chapter 7 of the Bankruptcy Code, commencing Case No. 13-50398, in the United States Bankruptcy Court for the Northern District of Georgia.

ALLEGATIONS REGARDING MARVELAY'S DECEPTIVE
AND UNFAIR BUSINESS PRACTICES

50.     After Marvelay's formation in 2012, Marvelay engaged in a scheme, started by Marvelay's predecessors, insiders and affiliates beginning in late 2002, to defraud and deceive consumers into purchasing adventure and leisure experiences through deceptive, misleading and fraudulent marketing practices. A significant majority of Marvelay's consumers were victims of the scheme as a result of the scheme's willful and systematic misappropriation of intellectual property rights of locally based businesses through the use of sales practices and thousands of websites designed to trick the consumer into believing they

19

were making a purchase from an actual operating business as opposed to making a purchase through an agent with a substantial markup. Over the course of the scheme, there were hundreds of thousands of consumer victims, at least 60,000 of whom were victimized within the Relevant Period, and hundreds of small business victims, resulting in tens of millions of dollars of claims against Marvelay.

Marvelay's Scheme

51.     Marvelay controlled thousands of domain names either directly or indirectly through affiliates. Many of these domain names were associated with websites which offered certain goods and services to consumers under a fictitious business name, including skydiving, ballooning, or other adventure or leisure activities.

52.     At least 900 of these domain names included a description of activities and a specific geographic location.

53.     Using the names of states and major cities throughout the United States as domain names, Marvelay, its insiders, and affiliates configured their websites to include descriptions and representations that would lead an unknowing consumer to believe that he or she had accessed and was viewing a website for an actual skydiving center, ballooning site, or adventure or leisure activity located in that particular city or geographic area.

54.     These websites provided the consumer with a telephone number to call to make a reservation or to purchase a gift certificate or voucher for an activity, including skydiving jumps and balloon rides. The hundreds of numbers that could be found throughout the thousands of websites controlled by Marvelay, its insiders, and affiliates did not connect the consumer with the advertised fictitious business purportedly located in the areas of the

advertised activity. Instead, these numbers all rang into a single phone bank located at the Due West Office address.

55.    These websites Marvelay owned or controlled contained false and misleading representations about Marvelay's identity and the services Marvelay provided.

56.    Marvelay did not actually provide any activities for which it purported to make reservations or sold gift certificates and vouchers; instead, these activities were provided by affiliates and third-party vendors, including the Affiliated Drop Zone Defendants.

57.    Marvelay was not, and had no intention of being, the actual provider of the advertised activities, including the activities provided by the Affiliated Drop Zone Defendants.

58.    Using Search Engine Optimization (SEO) techniques, fictitious reviews on third party websites, fictitious websites, advertising, and online marketing, Marvelay positioned websites it controlled to appear high on the list of results returned by search engines for a variety of activities in a wide range of locations throughout the United States, including the 20 largest major metropolitan areas in the country, excluding only Phoenix, Arizona due to the injunction in the Arizona Action.

59.    The information and representations on the websites Marvelay owned or controlled made it appear to consumers that the advertised activity would be performed by the business named in the website and in a specific location, when that business did not exist.

60.    The websites Marvelay owned or controlled also contained misappropriated content, including photos and text, from the websites of actual service providers of the advertised activities. Such

content was misappropriated by Marvelay and used on websites it owned or controlled in a way that was likely to cause confusion and to deceive consumers into believing Marvelay provided services in specific geographic locations.

61.    When a consumer, after calling or contacting Marvelay as a result of the consumer's website search, agreed to purchase a service, the consumer's credit card was charged, and the consumer was sent a gift certificate or voucher.

62.    The consumers were not aware that they had purchased a service from Marvelay until after they provided payment information and payment was processed.

63.    In many instances, Marvelay sold gift certificates and vouchers for activities advertised in specific geographical locations for which there were no third-party vendors available in the advertised location. Instead of offering refunds when requested, Marvelay attempted to make reservations for consumers in locations that were a considerable distance away from the advertised location.

64.    Marvelay misrepresented and/or failed to inform consumers of material terms and conditions of the purchase of services, gift certificates or vouchers, including but not limited to refund and cancellation policies.

65.    In many instances, Marvelay failed to secure reservations for consumers for the services purchased.

66.    In many instances, in order to obtain the consumer's permission to charge their credit card, Marvelay misrepresented to the consumer that they had a confirmed reservation

at a specified location and time and then later informed the consumer that the reservation location had changed considerably.

67.     In many instances, even where Marvelay contacted a vendor and made a reservation on behalf of the consumer, Marvelay was unresponsive or unable to provide service when consumers attempted to reschedule their reservation as a result of bad weather, overbooking, or a consumer change in schedule.

68.     Agents and employees of Marvelay posted favorable reviews of Marvelay's imaginary businesses on 3rd party websites including Google.com, Trip Advisor, Trustpilot, and Yelp. These reviews falsely stated or implied that agents and employees of Marvelay personally used the services offered by these businesses. The sham reviews bolstered the false impression that Marvelay's nonexistent businesses provided services to consumers at a specific geographical location.

69.     Marvelay made representations on its websites and in reviews that had the tendency or capacity to mislead or confuse consumers into believing that consumers could contact a local business that would provide the activity sought by the consumer, when in fact the consumer was dealing with a business located in Georgia that did not provide any of the advertised activities.

70.     Marvelay, through reviews and websites promoting fictitious business entities, made numerous misrepresentations and material omissions to consumers for the purpose of fraudulently inducing consumers to purchase goods and services, including but not limited to:

(a)    that Marvelay had verified the dates and times consumers requested for their purchased activities, prior to processing payments from consumers;

(b)    that consumers could participate in activities within specified cities, when in fact the advertised activity could not be provided within those cities or within a reasonable distance from those cities;

(c)    providing consumers with false information regarding activity descriptions, activity lengths, and arrival times;

(d)    that gift certificates and vouchers could be redeemed for activities in advertised locations when the activities were not available in the advertised locations; and

(e)    omitting the fact that Marvelay was acting as a booking and referral service and charging a substantial markup to the consumer for the service purchased.

71.    Based on all of the foregoing, Marvelay engaged in systematic fraudulent, unfair, and deceptive acts or practices with respect to consumers.

72.    Marvelay's conduct was fraudulent as to each consumer who used Marvelay as a booking agent or to purchase a gift certificate or voucher for services.

73.    Marvelay's conduct illegally infringed on the intellectual property rights of each service provider that did not accept Marvelay's advertising and gift certificates or vouchers and operated a service in the geographic location and industry where Marvelay advertised through its false and misleading websites. Each such service provider has claims against Marvelay (1) for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1115(a), (2) for trademark infringement under 15 U.S.C. § 1125(a), and (3) for cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

Second Georgia Action

74.    On March 6, 2014, the State of Georgia sent "Spot Reservation" an Investigative Demand.

75.    The State of Georgia thereafter determined that "Spot Reservation" was a dba name used by Marvelay and issued an Investigative Demand to Marvelay on July 10, 2014.

76.    In April 2015, the State of Georgia issued to Marvelay its first Notice of Contemplated Legal Action pursuant to O.C.G.A. §§ 10-1-397(c), but Marvelay refused to enter into an agreement that would resolve the investigation.

77.    On July 18, 2017, the State of Georgia sued Marvelay, Erran Yearty, Asta Quattrocchi, Thomas Rickey Bray Jr., and Falken, LLC d/b/a Trident Technology (collectively, the "Second Georgia Action Defendants") under the Georgia Fair Business Practices Act ("Georgia FBPA"), O.C.G.A. §§ 10-1-390 *et seq*., in the Superior Court of Cobb County, Georgia, Case No. 17-1-5434-58 ("Second Georgia Action").

78.    As a part of discovery in the Second Georgia Action, the State of Georgia served the Second Georgia Action Defendants, including Marvelay, with two requests for documents, seeking among other things, the production of certain sales calls recordings between Marvelay and consumers.

79.    In response to the production request, on February 12, 2018, the Second Georgia Action Defendants, including Marvelay, delivered a hard drive, which purported to contain the requested sales calls recordings, to an investigator for the State of Georgia. The

State of Georgia had difficulty retrieving the information from the hard drive, and as a result, the State of Georgia hired a computer forensics expert to analyze the data contained therein.

80.    After a chance to inspect the hard drive, the State of Georgia's expert concluded that the hard drive in question was intentionally wiped using specialized software prior to being turned over to the State of Georgia so that its data could not be viewed or retrieved, despite the duty to turnover this information in full.

81.    In addition to this spoliation of the evidence stored on the hard drive, Marvelay regularly abused the discovery process throughout the Second Georgia Action, including, but not limited to, Marvelay's refusal to produce certain vital information requested by the State of Georgia, and failure to meaningfully respond to questioning under oath at depositions.

82.    In response to Marvelay's multiple discovery abuses, on June 29, 2018, the State of Georgia filed a Motion for Sanctions in the State Court Action (the "First Sanctions Motion"). While this first motion was pending, on August 9, 2018, the State of Georgia filed a Second Motion for Sanctions and corresponding Brief, requesting that the state court strike Marvelay's Answer from the record, and exclude all arguments and evidence that Marvelay would attempt to present concerning the spoliated telephone calls (the "Second Sanctions Motion").

83.    On October 11, 2018, the Cobb County Superior Court in the Second Georgia Action entered its Order granting the First Sanctions Motion which, *inter alia*, required the Second Georgia Action Defendants, including Marvelay, to supplement their discovery responses by November 12, 2018 to provide additional information for each of their websites.

84.     Three days before the supplemental discovery responses were due, on November 9, 2018, Marvelay filed its voluntary Chapter 7 petition, initiating the Marvelay Bankruptcy Case.

85.     On December 4, 2018, the Bankruptcy Court entered an Order finding that Marvelay's bankruptcy filing did not stay the Second Georgia Action.

86.     On December 17, 2018, the Cobb County Superior Court in the Second Georgia Action entered its Order granting the Sanctions Motion (the "Sanctions Order"), holding that, *inter alia*, due to the discovery abuses, including the spoilation of evidence, the Answers of Marvelay, Erran Yearty, and Asta Quattrocchi were stricken from the record. As a result, on January 10, 2018, an entry of default was made in the Second Georgia Action as to Marvelay, Erran Yearty and Asta Quattrocchi.

87.     Thereafter, on July 29, 2019, an Order was entered against Marvelay in the Second Georgia Action, which was consented to by the Trustee and entered after the Trustee obtained approval from the Bankruptcy Court (the "Consent Order"). The Consent Order granted judgment against Marvelay and in favor of the State of Georgia in the amounts of: (i) $11,405,000.00 for civil penalties; (ii) $14,232,210.00 for restitution; and (iii) $362,790.00 for attorney's fees and costs. Such amounts have been allowed as general, unsecured claims of the State of Georgia in the Marvelay Bankruptcy Case.

Marvelay's Transactions with Consumers

88.     Prior to the Petition Date, substantially all of Marvelay's revenue was derived from transactions with consumers obtained through (i) fraud as to the consumer and (ii) unfair and deceptive practices in violation of the Georgia FBPA.

89.     Each transaction between Marvelay and a consumer was fraudulent and violated the Georgia FBPA, Federal Trade Commission Act, and other applicable law.

90.     Each transaction between Marvelay and a consumer resulted in liability for Marvelay in excess of the revenue received from the transaction, because the transaction created fraud claims of the consumer which included restitution and civil penalties as a result of the transaction's violation of the Georgia FBPA.

91.     A significant number of Marvelay's transactions with consumers infringed on the intellectual property rights of service providers that did not accept Marvelay's advertising and gift certificates or vouchers and operated a service in the geographic location and industry where Marvelay advertised through its false and misleading websites. Each such transaction resulted in claims of the service providers against Marvelay and violated applicable law, including the Federal Trade Commission Act, the Sherman Antitrust Act, the Clayton Act, and the Lanham Act.

92.     During the Relevant Period, Marvelay was insolvent because Marvelay was committing fraud and violating the Georgia FBPA or similar consumer protection statutes under Federal or other state law with each consumer transaction, and transactions with consumers accounted for substantially all of Marvelay's revenue.

93.     Marvelay's insolvency was further increased by each consumer whose purchase of services from Marvelay had been obtained through Marvelay's infringing on the intellectual property rights of vendors who were unwilling to transact business with Marvelay.

94.     Marvelay made each of the transfers listed on Exhibits A through E (the "Affiliated Vendor Transfers") to the Affiliated Drop Zone Defendants with the actual intent to hinder, delay or defraud Marvelay's consumer creditors by continuing its practice of

systematic fraudulent, unfair and deceptive acts or practices, including but not limited to, disguising Marvelay's true identity and geographic location, misrepresenting the services it actually provided, concealing its role as a broker and its charging additional fees beyond what, if anything, it paid to the actual provider of the goods or services in instances where the consumer actually received goods and services, providing false information to consumers to induce consumers to pay for activities, posting favorable reviews of fictitious businesses on the Internet, failing to inform consumers of material terms and conditions related to activities, and failing to take the action necessary to ensure that consumers were able to participate in the activities consumers purchased or to provide refunds if the activity would not or could not be provided as represented.

<u>Marvelay begins Operations with Funds provided by Cary Quattrocchi</u>

95.    On August 10, 2012, Marvelay opened a business checking account at Bank of America, N. A. (Account No. xxxxxx-5268).

96.    The resolution of Marvelay authorizing the establishment of the checking account stated that Asta Quattrocchi and Erran Yearty were both managers of Marvelay.

97.    Asta Quattrocchi and Erran Yearty each became authorized signers on the bank account.

98.    The operating agreement of Marvelay never reflected the addition of Asta Quattrocchi as a member or manager.

99.    On August 10, 2012, Cary Quattrocchi made an initial deposit of $100,000 into the Marvelay checking account and Marvelay began operating.

Use of Due West Property without Consideration

100.    On February 29, 2012, Defendant Granter Media transferred the Due West Property to Camorin.

101.    As of February 29, 2012, Cary Quattrocchi owned both Granter Media and Camorin.

102.    As of February 29, 2012, 80% of the Due West Property was occupied by Granter Media and Bilateral.

103.    As of February 29, 2012, Asta Quattrocchi was the owner and manager of Bilateral.

104.    Shortly after Marvelay began operating in August 2012, Marvelay began making cash transfers that were designated as rent to Camorin.

105.    One or more of the Affiliated Entity Defendants, including Bilateral, Falken, EWOK, Camorin, and Granter Media, continue to occupy the Due West Office.

106.    In addition to managing the affairs of Marvelay, while holding himself out as an advisor, Cary Quattrocchi occupied the Due West Office and operated various businesses that established a web presence using, upon information and belief, trade names for concealed entities which are owned by Cary Quattrocchi or in which he has an economic interest, including Pinicrest Systems, Fairlifts, and Foffer (collectively, the "Concealed Entities").

107.    Upon information and belief, none of the Affiliated Entity Defendants that occupied the Due West Office or the Concealed Entities, paid rent to Camorin or reimbursed Marvelay for the rent.

108.    Marvelay did not receive any value or benefit from the Affiliated Entity Defendants that occupied the Due West Office or the Concealed Entities.

109.    Upon information and belief, other than the lease with Camorin where Cary Quattrocchi obligated Marvelay to pay rent to Camorin, there were no written agreements regarding the payment of rent for the use of the Due West Property by the Affiliated Entity Defendant or the Concealed Entities.

110.    During the Relevant Period, Cary Quattrocchi caused Marvelay to transfer to Camorin at least $376,591.51 (the "Camorin Transfers") from Marvelay's bank account at Bank of America (Account No. xxxxxx-5268). The Camorin Transfers include those transfers set forth on Exhibit F attached hereto and incorporated herein by reference.

111.    The Camorin Transfers came directly from Marvelay's bank account and, therefore, constituted property in which Marvelay held an interest.

112.    Marvelay did not receive fair consideration in exchange for the Camorin Transfers.

Use of Employees by Affiliated Drop Zone Defendants, Affiliated Entity Defendants, and the Concealed Entities, without Consideration

113.    Hundreds of different employees were employed at the Due West Office after it began operating until shortly before the Petition Date.

114.    During the Relevant Period, Asta Quattrocchi caused Marvelay to make transfers to ADP to pay employees $4,047,911.67 from Marvelay's bank account at Bank of America (Account No. xxxxxx-5268) (the "Payroll Transfers"). Each of the Payroll Transfers is set forth on Exhibit G attached hereto and incorporated herein by reference.

115.    Upon information and belief, the employees at the Due West Office would schedule the consumer on behalf of and for the benefit of Affiliated Drop Zone Defendants, Affiliated Entity Defendants, and the Concealed Entities.

116.    There were no written agreements for the use of employees at the Due West Office between Marvelay and any of the Affiliated Drop Zone Defendants, Affiliated Entity Defendants, or the Concealed Entities.

117.    Upon information and belief, the call center employees at the Due West Office would schedule the consumer on behalf of and for the benefit of Affiliated Drop Zone Defendants, Affiliated Entity Defendants, and the Concealed Entities.

118.    The Payroll Transfers came directly from Marvelay's bank account and, therefore, constituted property in which Marvelay held an interest.

119.    Marvelay did not receive fair consideration in exchange for the Payroll Transfers.

<u>Use of Credit Cards to fund costs of Website Development, Maintenance and Other Expense for benefit of Affiliated Drop Zone Defendants and Affiliated Entity Defendants without consideration</u>

120.    During the Relevant Period, Asta Quattrocchi caused Marvelay to transfer $5,999,647.02 to American Express ("AMEX") branded credit cards (the "AMEX Transfers") and $4,810,663.91 to Chase ("Chase") branded credit cards (the "Chase Transfers") from Marvelay's bank account at Bank of America (Account No. xxxxxx-5268). The AMEX Transfers and the Chase Transfers are listed on Exhibit H attached hereto and incorporated herein by reference.

121.    Upon information and belief, many of these expenses were for the maintenance of websites, personal expenses of the Insider Defendants, and operating expenses of the Affiliated Entity Defendants and the Concealed Entities.

122.    There are no records allocating the AMEX Transfers and Chase Transfers between Marvelay, the Insider Defendants, Affiliated Entity Defendants, and the Concealed Entities.

123.    The Chase Transfers were on a credit card in the name of Asta Quattrocchi.

124.    The Chase Transfers were to or for the benefit of Asta Quattrocchi or the Affiliated Entity Defendants and the Concealed Entities.

125.    Marvelay did not receive fair consideration in exchange for the Chase Transfers.

126.    $1,685,052.18 of the Amex Transfers were on a credit card in the name of Asta Quattrocchi.

127.    The Amex Transfers were to or for the benefit of Asta Quattrocchi or the Affiliated Entity Defendants and the Concealed Entities.

128.    Marvelay did not receive fair consideration in exchange for the Amex Transfers.

Use of Websites for benefit of Affiliated Drop Zone Defendants and Affiliated Entity Defendants without consideration

129.    The consumers who contacted the call center at the Due West Property were solicited through thousands of websites.

130.    All or a substantial portion of these websites, including RushCube.com, Spotreservation.com, Skydiving.com, Flydar.com, Soaring Sports.com and thousands of websites with local and activity specific names like skydivingnearcleveland.com, cincinnatihotairballons.com, and California-helicopter-charters.com, were used solely to enrich the Insider Defendants, the Affiliated Entity Defendants, and the Concealed Entities.

131.    Upon information and belief, there are no written agreements setting forth the ownership of the websites by and among Marvelay, the Insider Defendants, the Affiliated Entity Defendants, and the Concealed Entities.

132.    Upon information and belief, the Insider Defendants, Affiliated Entity Defendants, and the Concealed Entities used Marvelay as a disbursing agent to pay the costs to develop and maintain these websites and pay the costs associated therewith, including the following costs:

a.    Costs of registering and continuing to register thousands of domain names;

b.    Costs of paying contract labor to list fictitious business addresses;

c.    Costs of paying contract labor to write fictitious reviews;

d.    Costs of maintaining local and 800 numbers referenced on the websites;

e.    Costs of paying contract labor to write copy websites with local and activity specific names designed to have the website show up in local searches; and

f.    Costs of updating the websites.

133.    The Insider Defendants, Affiliated Entity Defendants, and the Concealed Entities knew that the websites and marketing were fraudulent, unfair and deceptive to consumers who contacted Marvelay to purchase vouchers and gift certificates.

134.    The Insider Defendants, Affiliated Entity Defendants, and the Concealed Entities were fully aware that Marvelay's conduct illegally infringed on the intellectual property rights of each service provider that did not accept Marvelay's advertising and gift certificates

or vouchers and operated a service in the geographic location and industry where Marvelay advertised through its false and misleading websites.

135.    The Insider Defendants, Affiliated Entity Defendants, and the Concealed Entities knew by virtue of the First Georgia Action, Second Georgia Action, and Arizona Judgment that Marvelay was incurring millions of dollars in liability.

136.    The Insider Defendants, Affiliated Entity Defendants, and the Concealed Entities only funded Marvelay as necessary to pay expenses for their benefit.

<u>Retention of Groupon Revenues by Bilateral or Affiliated Entity Defendants</u>

137.    Based on the audio recording taken by the Trustee at Marvelay's 341 Hearing, Defendant Erran Yearty provided the following testimony in response to questions about how Groupon worked from Ms. Kneidel, the Assistant Attorney General in the Consumer Protection Division of the Office of the Attorney General for the State of Georgia:

> **Ms. Kniedel**: Tell us how the Groupon advertising worked for Marvelay.
> **Mr. Yearty**: Marvelay just did…another company would run offers on Groupon in conjunction with the actual vendors, so let's say for example SkyDive Philadelphia or SkyDive Georgia, we at Marvelay would provide the scheduling through that vendor for these offers. Many skydiving drop zones, and hot air balloon providers don't like dealing with their own marketing. A lot of these are small companies sometimes just one employee and they count on us to handle and schedule for them, so third party companies would negotiate the offers with the drop zones and then we would be provided with a list of customers and their voucher numbers when the customers would call in we would just look up what their voucher number was and put it on the schedule for the vendor.
> **Ms. Kniedel**: So, if someone purchased a skydiving activity through Groupon those persons pay Groupon initially—
> **Mr**. **Yearty:** Yes ma'am.
> **Ms. Kniedel:** -- and then Groupon pays the provider?
> **Mr. Yearty**: Groupon pays the company that negotiated the deal with Groupon and then that company pays… Marvelay would schedule these things send this list of vendor over to that other

company or these lists of invoices that came through from voucher
numbers then Marvelay would be paid and Marvelay would pay
the vendor.

**Ms. Kniedel**: So, Groupon would pay Marvelay?

**Mr. Yearty**: **No Groupon would pay the company that
negotiated the offers**. *(emphasis added)*

**Ms. Kniedel**: So, there was no contractual relationship between
Marvelay and Groupon?

**Mr. Yearty**: Not to my knowledge.

138.    Upon information and belief, Bilateral was the contracting party between
collective buying companies, such as Groupon, and local adventure sports vendors (vendors
that offer sky diving, parachuting, hot air balloon rides, etc., including the Affiliated Drop
Zones Defendants).

139.    On January 23, 2012, in connection with a loan application of Bilateral to be
guaranteed by Asta Quattrocchi with United Community Banks, Inc. ("UCB"), Asta
Quattrocchi advised UCB as follows:

> Bilateral had relationships with the largest collective buying companies,
> Groupon and Living Social.

> By utilizing an on-line marketing campaign, Bilateral, through the presence of
> thousands of top-ranked domains, leaves the company unmatched when dealing
> specifically with adventure sports.

> C Quattrocchi has many adventure sports affiliates.

> Since its formation on December 10, 2010 through December 31, 2011
> Bilateral made $1.6 million and had the following assets as of the fiscal year
> ending 12/31/2011:

> * Cash balance of $1,276,000
> * Trade A/R of $167,000
> * Undeposited funds of $60,000
> * Due from related companies $137,000
> * Bilateral and Granter Media occupy 80% of rentable space at the Due
>   West Property

140.    Based on the information provided to UCB in connection with the loan application of Bilateral, the Affiliated Entity Defendants and the Insider Defendants received and retained $9,000,000 from the Groupon relationship.

141.    Upon information and belief, Marvelay paid all the costs to fulfill Bilateral's obligations to Groupon.

142.    Upon information and belief, there are no written agreements between Marvelay and any of the Affiliated Drop Zone Defendants and Affiliated Entity Defendants, including Bilateral, regarding the provision by Marvelay of these services for the benefit of the Affiliated Drop Zone Defendants and Affiliated Entity Defendants.

<u>Marketing Payments to Affiliated Entity Defendants</u>

143.    Upon information and belief, Cary Quattrocchi, the Affiliated Entity Defendants, and the Concealed Entities received substantial sums for the development of websites and marketing techniques used by Marvelay.

144.    The Affiliated Entity Defendants knew that the websites and marketing were fraudulent, unfair and deceptive to consumers who contacted Marvelay to purchase vouchers and gift certificates.

145.    The Affiliated Entity Defendants were fully aware that Marvelay's conduct illegally infringed on the intellectual property rights of each service provider that did not accept Marvelay's advertising and gift certificates or vouchers and operated a service in the geographic location and industry where Marvelay advertised through its false and misleading websites.

146.     In the Arizona Action, the Arizona District Court found as follows regarding

the conduct of the Arizona Action Defendants, including Cary Quattrocchi, when they were

asked by Skydive Arizona to cease infringing:

> Defendants ignored those requests, choosing instead to
> continue their profitable scheme, even bragging that no one
> could stop them. Regarding the trademark claim, Plaintiff
> introduced a substantial amount of evidence showing that
> Defendants knew about Skydive Arizona before they infringed
> its trademark and utilized that trademark to confuse potential
> customers into doing business with Defendants, even going so
> far as to instruct phone operators to answer affirmatively if a
> caller asked if he or she was speaking with Skydive Arizona.
> And, based on their testimony in this case, the Court finds that
> Defendants completely fail to appreciate or accept the
> wrongfulness of their conduct. Defendants seeming disregard
> for the people they harmed or the reputation they sullied,
> convinces this Court that an increase in the amount of actual
> damages is proper and, as a result, will double each damage
> award. claim and $2,000,000 in actual damages on Plaintiffs
> false advertising claim.

147.     The services provided by the Affiliated Entity Defendants with regard to

marketing and maintaining websites provided no value to Marvelay as the results of the

infringement on the intellectual property rights of each service provider that did not accept

Marvelay's advertising and gift certificates or vouchers and operated a service in the

geographic location and industry where Marvelay advertised through its false and misleading

websites and the marketing was fraudulent, unfair and deceptive to consumers who contacted

Marvelay to purchase vouchers and gift certificates.

148.     The use of the Due West Property without consideration, the use of employees by

Affiliated Drop Zone Defendants and Affiliated Entity Defendants without consideration, the use of

credit cards to fund costs of website development, maintenance and other expense for benefit of

Affiliated Drop Zone Defendants and Affiliated Entity Defendants without consideration, the use of websites for benefit of Affiliated Drop Zone Defendants and Affiliated Entity Defendants without consideration, the retention of Groupon revenues by Bilateral or Affiliated Entity Defendants, and the marketing payments to Affiliated Entity Defendants all constitute fraudulent transfers to or for the benefit of each recipient.

Breach of Fiduciary Duties to Marvelay

149.    As managers of Marvelay, Erran Yearty and Asta Quattrocchi each owed a duty to Marvelay to act in good faith and owed fiduciary duties to Marvelay and its creditors.

150.    By their actions, Erran Yearty and Asta Quattrocchi failed to exercise due care and loyalty as managers of Marvelay.

151.    Erran Yearty and Asta Quattrocchi breached their fiduciary duties owed to Marvelay directly and proximately causing the loss of millions of dollars in property for Marvelay and the dissipation of Marvelay's assets.

Aiders and Abettors of Fiduciary Duty Breach

152.    Yvonne Crooks Cline, Chris Surhoff, and Cary Quattrocchi each knowingly aided, abetted and participated in the breach by Erran Yearty and Asta Quattrocchi of fiduciary duties to Marvelay, directly and proximately causing the loss of millions of dollars in property for Marvelay and the dissipation of Marvelay's assets.

Involvement of Aiders and Abettors

Cary Quattrocchi

153.    Cary Quattrocchi was an advisor to Marvelay.

154.    Cary Quattrocchi was at the Due West Office almost every day.

155.     Upon information and belief, Asta Quattrocchi reported to and was directed by Cary Quattrocchi.

156.     Pinicrest Systems was owned by Cary Quattrocchi and did work for Marvelay.

157.     Cary Quattrocchi established entities which he owned or controlled.

158.     On the bank account at Bank of America (Account No. xxxxxx-4229) in the name of Thirty Red, LLC ("Thirty Red Account"), Cary Quattrocchi prepared checks with his name and address and used them to pay personal expenses.

159.     Cary Quattrocchi was aware that the Affiliated Drop Zone Defendants, Affiliated Entity Defendants and the Concealed Entities were receiving transfers and actively assisted in the concealment of these funds from Marvelay's creditors.

160.     Cary Quattrocchi actively managed the affairs of Marvelay, the Affiliated Drop Zone Defendants, Affiliated Entity Defendants, and the Concealed Entities.

161.     Cary Quattrocchi's conduct was a proximate cause of increasing the number of consumers fulfilled through fraudulent and deceptive means by Marvelay causing millions of dollars of damages to the detriment and harm of Marvelay.

162.     Cary Quattrocchi's conduct was a proximate cause of the receipt by the Affiliated Drop Zones and Affiliated Entity Defendants of millions of dollars of transfers to the detriment and harm of Marvelay.

Yvonne Crooks Cline

163.     Yvonne Crooks Cline has a B.B.A. in finance and has worked throughout her professional career in accounting related roles.

164.     Yvonne Crooks Cline first met Cary Quattrocchi in 1998.

165.     Yvonne Crooks Cline and Cary Quattrocchi became friends and then lived together.

166.   Yvonne Crooks Cline provided bookkeeping and other administrative services for the predecessors of Marvelay.

167.   Within one month of the entry of the judgment in the Arizona Action against the Arizona Action Defendants, Defendant Yvonne Crooks Cline formed three companies: Parabolic, LLC, Wind Favor, and Sonic Air.

168.   Yvonne Crooks Cline managed the accounting for the Affiliated Drop Zone Defendants and the Affiliated Entity Defendants.

169.   Yvonne Crooks Cline was a signatory on the bank accounts of Affiliated Drop Zone Defendants which have collectively received millions of dollars in transfers from Marvelay during the Relevant Period.

170.   Yvonne Crooks Cline was the signatory on the Thirty Red Account which received $31,384.00 in initial transfers from Marvelay during the Relevant Period and at least $219,568.16 in subsequent transfers from the Affiliated Drop Zone Defendants and Affiliated Entity Defendants during the Relevant Period and from which at least $189,924.25 in subsequent transfers were paid to or for the benefit of the Insider Defendants.

171.   Yvonne Crooks Cline was aware that the Affiliated Drop Zone Defendants and Affiliated Entity Defendants were receiving transfers and actively assisted in the concealment of these funds from Marvelay's creditors.

172.   Yvonne Crooks Cline was aware that Cary Quattrocchi was actively managing the affairs of Marvelay, the Affiliated Drop Zone Defendants and Affiliated Entity Defendants.

173.   Yvonne Crooks Cline's conduct was a proximate cause of increasing the number of consumers fulfilled by Marvelay causing millions of dollars of damages to the detriment and harm of Marvelay.

174.    Yvonne Crooks Cline's conduct was a proximate cause of the receipt by the
Affiliated Drop Zones and Affiliated Entity Defendants of millions of dollars of transfers to the
detriment and harm of Marvelay.

175.    On September 28, 2018, Sonic Air, even though it has been administratively
dissolved, made transfers to Marvelay of $28,954.00 and $15,053.00 (the "Sonic Air
Payments") in order to provide funding for Marvelay, including $23,896.07 to Marvelay's
attorneys paid on October 5, 2018, who were appearing on behalf of Marvelay and other
defendants in the Second Georgia Action.

176.    Cline was the signatory on the Sonic Air Payments to Marvelay.

C. Surhoff

177.    Chris Surhoff was the Business Development Manager at Marvelay.

178.    Chris Surhoff recruited and maintained relationships with vendors who would fulfill
Groupon vouchers for which one or more of the Affiliated Entity Defendants would be paid by
Groupon and vouchers and gift certificates issues by Marvelay which were paid to EWOK.

179.    Chris Surhoff was the Business Development Manager at Foffer and Bilateral.

180.    Chris Surhoff and was aware that Bilateral, Foffer and other Concealed Entities were
receiving funds paid by Marvelay's customers.

181.    Chris Surhoff actively assisted in the concealment of these funds from Marvelay in
order to defraud Marvelay's customers.

182.    Chris Surhoff was fully aware of the fraudulent, unfair and deceptive marketing
practices of Marvelay.

183.    Chris Surhoff was fully aware that Marvelay's conduct illegally infringed on the
intellectual property rights of each service provider that did not accept Marvelay's advertising

42

and gift certificates or vouchers and operated a service in the geographic location and industry where Marvelay advertised through its false and misleading websites.

184.    Chris Surhoff's conduct was a proximate cause of increasing the number of consumers fulfilled by Marvelay causing millions of dollars of damages to the detriment and harm of Marvelay

185.    Chris Surhoff's conduct was a proximate cause of the receipt by the Affiliated Drop Zones and Affiliated Entity Defendants of millions of dollars of transfers to the detriment and harm of Marvelay.

<u>BADGES OF FRAUD</u>

186.    With respect to each of the transfers described herein, the following badges of fraud, among others, are applicable and are to be considered in determining actual intent to hinder, delay, or defraud.

<u>Insiders</u>

187.    The transfers are to insiders.

<u>Acts of Concealment</u>

188.    After Marvelay's formation and through the Petition Date, Marvelay did business under various "doing business as" names or dbas, including "Gadzuk," "Thrillant," Thrillations" "Spot Reservation," and "Rushcube."

189.    In the Special Master Order, the following was noted by the Special Master:

> In this regard, the Special Master notes that Counsel for SkyDive Litigation Defendant Rason, LLC ("Rason") and SkyDive Litigation and Defendant and Headband Litigation Defendant Plutian, LLC ("Plutian"), each of which is currently doing business at the Due West Office, stated at hearing on the motion to appoint a receiver that he was "not authorized" to disclose the identity of other businesses or individuals

currently doing business at the Due West Office. (Special
Master Order Page 4)

190.    The Affiliated Drop Zones and the Affiliated Entity Defendants regularly changed

tradenames and concealed their legal identity.

191.    Prior to the Petition Date, Marvelay's principal place of business was 2601 Summers

Street, Kennesaw, Cobb County, Georgia, which is the same location as the Due West Office.

Specifically, the address 2601 Summer Street, Kennesaw, Georgia was formerly 2593 Kennesaw Due

West Road, Kennesaw, Georgia. The address was changed from 2593 Kennesaw Due West Road to

2593 Summer Street sometime between 2013 and 2014 and was then changed to 2601 Summer Street

in 2015.

192.    The Insider Defendants, through the Affiliated Entity Defendants, including EWOK,

and the Concealed Entities, directed customers of Marvelay to directly pay money belonging to

Marvelay to EWOK. EWOK wrongfully took control of credit card proceeds generated by sales to

Marvelay's customers and has concealed the receipt and use of such funds by misdirecting such funds

to the Insider Defendants, other Affiliated Entity Defendants and the Concealed Entities.

Lack of Consideration

193.    Little or no consideration was received by Marvelay in exchange for the

transfers.

Illegal Activities

194.    Marvelay engaged in systematic fraudulent, unfair, and deceptive acts or practices with

respect to consumers in violation of applicable state and federal law. With respect to consumers who

were provided services at the Affiliated Drop Zone Defendants' drop zone locations, such

consumers made purchases as the result of fraudulent, unfair and deceptive practices,

including selling gift certificates in violation of the Federal Credit Card act, failing to inform

consumers or misleading them regarding the cancellation policy, causing the consumer to travel substantially farther than other centers through the use of false and misleading information, and having misdirected consumers from competitors through conduct in violation of applicable law.

195.    Marvelay's conduct illegally infringed on the intellectual property rights of each service provider that did not accept Marvelay's advertising and gift certificates or vouchers and operated a service in the geographic location and industry where Marvelay advertised through its false and misleading websites. Each such service provider has claims against Marvelay (1) for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1115(a), (2) for trademark infringement under 15 U.S.C. § 1125(a), and (3) for cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

Inadequate Records and Lack of Corporate Formalities

196.    Except for a written lease between Camorin and Marvelay, upon information and belief, there were no written agreements documenting the transfers or documenting transactions between Marvelay and any of the Defendants. Additionally, Marvelay and the Affiliated Entity Defendants failed to follow corporate or organizational formalities with a number of the Affiliated Entity Defendants being administratively dissolved or operating without authority including Camorin, Sonic Air, and Granter Media.

Threat of Litigation

197.    In April 2015, the State of Georgia issued to Marvelay its first Notice of Contemplated Legal Action pursuant to O.C.G.A. §§ 10-1-397(c), but Marvelay refused to enter into an agreement that would resolve the investigation.

<u>Destruction of Records</u>

198.    Sometime between October 11, 2018 and November 9, 2018, Erran Yearty and

Asta Quattrocchi destroyed virtually all Marvelay's business records, including copies.

<u>Insolvency</u>

199.    Marvelay was insolvent at all times. Specifically, Marvelay was committing

fraud and violating the Georgia FBPA or similar consumer protection statutes under Federal

or other state law with each consumer transaction, and transactions with consumers accounted

for substantially all of Marvelay's revenue. Additionally, a significant number of Marvelay's

transactions with consumers infringed on the intellectual property rights of service providers

that did not accept Marvelay's advertising and gift certificates or vouchers and operated a

service in the geographic location and industry where Marvelay advertised through its false

and misleading websites. Each such transaction resulted in claims of the service providers

against Marvelay and violated applicable law, including the Federal Trade Commission Act,

the Sherman Antitrust Act, the Clayton Act, and the Lanham Act.

INADEQUATE CAPITALIZATION APPLICABLE
<u>TO ALTER EGO AND PIERCING THE VEIL CLAIMS</u>

200.    In addition to the badges of fraud alleged above and other facts elsewhere in the

Complaint, at all times, Marvelay's capitalization was inadequate to satisfy the claims against it as a

result of its fraudulent practices. Throughout the Relevant Period, Marvelay's average daily

balance was less than a week of operating expenses which was grossly inadequate

capitalization in light of the liabilities being incurred as a result of the illegal scheme to

defraud and deceive consumers into purchasing adventure and leisure experiences through

deceptive, misleading and fraudulent marketing practices along with the willful and

systematic misappropriation of intellectual property rights

## THE TRANSFERS

201.    During the Relevant Period, the Insider Defendants, the Related Insider Defendants, Affiliated Drop Zone Defendants, the Affiliated Entity Defendants and Subsequent Transferee Defendants (as defined below) withdrew directly or indirectly at least $18,383,045.37 from Marvelay's business checking account at Bank of America, N.A. (Account No. xxxxxx-5268) as detailed in Exhibit A through I and Paragraph 227 hereof as to Defendant Lisa Strawn (collectively, the "Initial Transfers").

202.    All of the Initial Transfers were made in furtherance of the scheme to defraud and deceive consumers into purchasing adventure and leisure experiences through deceptive, misleading and fraudulent marketing practices along with the willful and systematic misappropriation of intellectual property rights.

203.    The Insider Defendants, the Related Insider Defendants, Affiliated Drop Zone Defendants, the Affiliated Entity Defendants and Subsequent Transferee Defendants received the Initial Transfers or Subsequent Transfers (as defined below) with actual knowledge of the fraudulent scheme being perpetuated at Marvelay.

204.    The Insider Defendants, Affiliated Drop Zone Defendants and Affiliated Entity Defendants are either initial transferees of the Initial Transfers (the "Initial Transferees") or conduits of such Initial Transfers for the benefit of the Insider Defendants and the Concealed Entities. If the Insider Defendants, Affiliated Drop Zone Defendants and Affiliated Entity Defendants are the initial transferees of the Initial Transfers, then the Insider Defendants, Concealed Entities, or Related Insider Defendants as the case may be are the subsequent transferees for the purposes of this Complaint and are included in the definition of Subsequent Transferee Defendants. To the extent the Related Insider Defendants, Affiliated Drop Zone

Defendants, Affiliated Entity Defendants and the Concealed Entities are determined to be a conduit for the funds paid by Marvelay for the benefit of the Insider Defendants, the Insider Defendants are initial transferees for whose benefit such transfers were made for purposes of this Complaint. To the extent the Affiliated Entity Defendants or the Concealed Entities are determined to be a conduit for the funds withdrawn for the benefit of the Subsequent Transferee Defendants, the Subsequent Transferee Defendants are initial transferees for whose benefit such transfers were made, for the purposes of this Complaint.

Transfers to Thirty Red and Certain Defendants

205.    Between November 10, 2015 and March 6, 2017, $284,608.90 was deposited into Thirty Red's bank account at Chase Bank, N.A., Account No. xxxxxx4299, consisting of the following transfers:

| Initial Transfers from Marvelay | July 22, 2016 | $31,384.00 |
|---|---|---|
| Immediate or mediate transfers from Wind Favor d/b/a Skydive Philadelphia | November 2, 2015<br>December 4, 2015<br>April 12, 2016 | $4,550.00<br>$6,613.00<br>$2,300.00 |
| Immediate or mediate transfers from 4DZ d/b/a Skylander Andrews | February 17, 2016 | $5,000.00 |
| Immediate or mediate transfers from Bilateral, LLC | March 21, 2016<br>April 26, 2016 | $29,925.00<br>$ 5,180.26 |
| Immediate or mediate transfers from Durden, LLC | June 3, 2016<br>April 26, 2016 | $29,476.39<br>5,180.26 |
| Immediate or mediate transfers from 4DZ | September 27, 2016 | $50,000.00 |
| Immediate or mediate transfers from SDPA | October 28, 2016<br>December 13, 2016 | $25,000.00<br>$90,000.00 |

206.    Between November 25, 2015 and March 6, 2017, at least $189,924.25 of the $284,608.90 deposited into Thirty Red's bank account at Chase Bank, N.A., Account No. xxxxxx4299, was paid from the Thirty Red's bank account at Chase Bank, N.A., Account No. xxxxxx4299, to or for benefit of the following subsequent transferees (the "Thirty Red Transfers"):

| Payee | Date | Amount |
|---|---|---|
| Erran Yearty | September 26, 2016 | $10,000.00 |
| Asta Quattrocchi | December 28, 2015 | $ 2,730.38 |
| Asta Quattrocchi | March 25, 2016 | $2,633.56 |
| Asta Quattrocchi | September 15, 2016 | $3,819.19 |
| Lisa Strawn | March 4, 2016 | $1,309.19 |
| Lisa Strawn | January 24, 2017 | $7,000.00 |
| Darlene Zdrojewski | September 26, 2016 | $8,608.71 |
| John Quattrocchi | April 26, 2016 | $7,000.00 |

| Beneficiary and Payee | Date | Amount |
|---|---|---|
| Cary Quattrocchi and Albright, LLC | | |
| Underground Analysis | December 29, 2016 | $350.00 |
| Firm Foundations | November 17, 2016 | $62,351.00 |
| Firm Foundations | January 12, 2017 | $15,000.00 |
| Firm Foundations | March 6, 2017 | $20,500.00 |
| Best Price Custom Cabinet and Woodworking | December 13, 2016 | $8,171.72 |
| Quiet Gardens | May 10, 2016 | $2,400.00 |
| Quiet Gardens | May 12, 2016 | $2,000.00 |
| Quiet Gardens | May 16, 2016 | $958.00 |
| Quiet Gardens | May 24, 2016 | $382.00 |
| A/C Installers | December 19, 2016 | $5,000.00 |
| | | |

| Beneficiary and Payee | Date | Amount |
|---|---|---|
| Cary Quattrocchi | | |
| | | |
| Hollis Cobb Associates | March 4, 2016 | $360.26 |
| Credit Collection Services | March 4, 2016 | $587.60 |
| Metropolitan Classic Cars, Inc. | February 12, 2016 | $29,710.50 |

207.    The foregoing transfers for the benefit of Cary Quattrocchi and Albright, LLC totaling $117,112.72 were to improve or maintain 424 Brookwood Drive W, Dawsonville, Georgia.

208.    The foregoing transfers to Hollis Cobb Associates and Credit Collection Services for the benefit of Cary Quattrocchi totaling $947.86 were to pay collection agencies for debts owed by Cary Quattrocchi. While the check was drawn on the Thirty Red Account,

the imprint on the check was for Cary Quattrocchi at his residence address of 100 Hopewell Grove Drive, Atlanta, Georgia 30004.

209.    Upon information and belief, the transfer of $29,710.51 to Metropolitan Classic was for the purchase of an auto for the benefit of Cary Quattrocchi.

210.    The Thirty Red Transfers were not for obligations of Marvelay but were for obligations of another person or entity.

211.    Marvelay did not receive any value on account of any of the Thirty Red Transfers.

212.    Upon information and belief, there was no contract or agreement between the recipient of the Thirty Red Transfers and Thirty Red.

213.    To the extent that the recipients of the Thirty Red Transfers accepted payment from Thirty Red based upon debts or obligations owed by another, the payments were not accepted in good faith.

214.    The recipients of the Thirty Red Transfers knew or should have known that the Thirty Red Transfers were fraudulent as to creditors of Marvelay.

215.    Upon information and belief between November 25, 2015 and March 6, 2017, $60,028.01 of the $284,608.90 that was deposited into Thirty Red's bank account at Chase Bank, N.A., Account No. xxxxxx4299, was used to personal expenses of one or more of the Insider Defendants, including payments to American Express, Macy's, and TJX rewards of at least $33,000.00.

TRANSFERS TO AFFILIATED DROP ZONE DEFENDANTS

One Year Preferential Transfers

216.   Within one year before the Petition Date, Marvelay made payments of at least $825,011.16 in avoidable transfers (collectively, the "One-Year Preferential Transfers") including those detailed on Exhibits B through D, F and I, attached hereto and incorporated herein, to or for the benefit of the Defendants listed on each exhibit.

217.   The One-Year Preference Defendants (as defined below) are insiders of Marvelay.

218.   Based upon the Trustee's reasonable due diligence under the circumstances of this case and the foregoing allegations, One-Year Preference Defendants have no known or reasonably knowable affirmative defenses to the One-Year Preferential Transfers.

219.   The One-Year Preferential Transfers are avoidable and recoverable under sections 547, 550(a), and 551 of the Bankruptcy Code.

Affiliated Vendor Transfers

220.   During the Relevant Period, Marvelay made payments of at least $372,681.00 in avoidable transfers to or for the benefit of 4DZ, all of which were made by Marvelay in connection with its scheme to defraud consumers (the "4DZ Fraudulent Transfers"). The 4DZ Fraudulent Transfers include those transfers set forth and identified on Exhibit A.

221.   During the Relevant Period, Marvelay made payments of at least $217,627.14 in avoidable transfers to or for the benefit of SC Skydiving, all of which were made by Marvelay in connection with its scheme to defraud consumers (the "SC Skydiving Fraudulent Transfers"). The SC Skydiving Fraudulent Transfers include those transfers set forth and identified on Exhibit B.

222.    During the Relevant Period, Marvelay made payments of at least $407,284.25 in avoidable transfers to or for the benefit of SDG, all of which were made by Marvelay in connection with its scheme to defraud consumers (the "SDG Fraudulent Transfers"). The SDG Fraudulent Transfers include those transfers set forth and identified on Exhibit C.

223.    During the Relevant Period, Marvelay made payments of at least $1,065,193.50 in avoidable transfers to or for the benefit of SDPA, all of which were made by Marvelay in connection with its scheme to defraud consumers (the "SDPA Fraudulent Transfers"). The SDPA Fraudulent Transfers include those transfers set forth and identified on Exhibit D.

224.    During the Relevant Period, Marvelay made payments of at least $408,737.98 in avoidable transfers to or for the benefit of Wind Favor, all of which were made by Marvelay in connection with its scheme to defraud consumers (the "Wind Favor Fraudulent Transfers"). The Wind Favor Fraudulent Transfers include those transfers set forth and identified on Exhibit E.

Affiliated Entity Transfers

225.    During the Relevant Period, Marvelay made payments of at least $376,591.51 in avoidable transfers to or for the benefit of Camorin, all of which were made by Marvelay in connection with its scheme to defraud consumers (the "Camorin Fraudulent Transfers"). The Camorin Fraudulent Transfers include those transfers set forth and identified on Exhibit F.

226.    During the Relevant Period, Marvelay made payments of at least $669,943.81 in avoidable transfers to or for the benefit of Falken, all of which were made by Marvelay in connection with its scheme to defraud consumers (the "Falken Fraudulent

Transfers"). The Falken Fraudulent Transfers include those transfers set forth and identified

on Exhibit I

<u>Transfers to Lisa Strawn</u>

227.   During the Relevant Period, Marvelay, in addition to the Thirty Red Transfers,

made payments of at least $6,763.58 in avoidable transfers to or for the benefit of Lisa Strawn,

all of which were made by Marvelay in connection with its scheme to defraud consumers (the

"Lisa Strawn Fraudulent Transfers"). The Lisa Strawn Fraudulent Transfers include those

transfers set forth and identified below:

| Lisa Strawn | November 9, 2015 | $6,000.00 |
| Lisa Strawn | February 5, 2016 | $763.58 |

<u>The Subsequent Transfers</u>

228.   Based on the Trustee's investigation to date, all or a portion of the Initial

Transfers were subsequently transferred, directly or indirectly, to one or more of the defendants

named in this Complaint including the Thirty Red Transfers set forth above (the "Subsequent

Transfers"). Upon information and belief, one or more the Insider Defendants, Related Insider

Defendants, and Affiliated Entity Defendants (the "Subsequent Transferee Defendants")

received the Subsequent Transfers of the avoidable fraudulent transfers referenced herein,

which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

229.   The Subsequent Transferee Defendants received the Subsequent Transfers,

directly or indirectly, from the Initial Transferees with actual knowledge of the fraudulent

scheme being perpetuated at Marvelay.

230.   To the extent any of the Initial Transfers were made to, or for the benefit of,

any Subsequent Transferee Defendants, said Subsequent Transferee Defendants are the initial

transferees of such transfers and are included in the definition of the Initial Transferees for purposes of the allegations herein.

231. The Subsequent Transfers, or the value thereof, are recoverable from the Subsequent Transferee Defendants pursuant to section 550(a) of the Bankruptcy Code.

The Fraudulent Transfers

232. During the Relevant Period, the Insider Defendants, the Related Insider Defendants, Affiliated Drop Zone Defendants, the Affiliated Entity Defendants and Subsequent Transferee Defendants withdrew directly or indirectly at least $18,383,045.37 from Marvelay's business checking account at Bank of America, N.A (Account No. xxxxxx-5268), as detailed in Exhibit A through I and paragraph 227 at to Defendant Lisa Strawn, under circumstances that should have put the Defendants on notice that the Transfers were fraudulently made by Marvelay in connection with its scheme to defraud consumers and infringe on intellectual property rights (collectively, the "Fraudulent Transfers").

233. The Fraudulent Transfers are avoidable and recoverable under sections 548, 550(a), and 551 of the Bankruptcy Code and/or 544, 550(a), and 551 of the Bankruptcy Code and Sections 18-2-74 and 18-2-77 of the Georgia Code.

234. The Fraudulent Transfers were directly or indirectly made to or for the benefit of the Defendants, as set forth herein.

## REQUEST FOR RELIEF AND RESERVATION OF RIGHTS

235. The Trustee's investigation is on-going, and therefore the Trustee reserves the right to amend the Complaint or file other appropriate pleadings to supplement the information in this Complaint and to: (i) identify subsequent transfers; (ii) seek recovery with respect to such additional transfers; (iii) bring 90 day preference claims under Section 547

(b)(4)(A) of the Bankruptcy Code for any transfer identified herein or in an amended complaint; (iv) bring turnover claims under Section 542 of the Bankruptcy Code for any property that is property of the estate and/or impose a constructive trust thereon; (v) add or name other defendants including the Concealed Entities; and (vi) seek equitable or injunctive relief, including, without limitation, the appointment of a receiver for one or more of the Defendants or the Concealed Entities or their predecessors and successors in interest.

236.    To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pleaded in the alternative.

<u>COUNT I</u>
Breach of Fiduciary Duty

237.    The Trustee repeats and re-alleges the allegations contained in all of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

238.    As managers of Marvelay, Erran Yearty and Asta Quattrocchi each owed a duty to act in good faith and fiduciary duties to Marvelay and its creditors.

239.    By their actions as outlined above, Erran Yearty and Asta Quattrocchi failed to exercise due care and loyalty as managers of Marvelay.

240.    Erran Yearty and Asta Quattrocchi breached their fiduciary duties owed to Marvelay directly and proximately causing the loss of millions of dollars in property for Marvelay and the dissipation of Marvelay's assets.

241.    Erran Yearty and Asta Quattrocchi breached their fiduciary duties owed to Marvelay directly and proximately causing Marvelay's consumers to be deprived of assets that would have been available in the Marvelay Bankruptcy Case.

242.    The Trustee seeks compensatory damages as against Yearty and Asta Quattrocchi in an amount to be determined at trial.

<u>COUNT II</u>
Aiding and Abetting Breach of Fiduciary Duty

243.    The Trustee repeats and re-alleges the allegations contained in all of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

244.    Yvonne Crooks Cline, Chris Surhoff, and Cary Quattrocchi (collectively, the "Abettors") each knowingly aided, abetted and participated in the breach by Erran Yearty and Asta Quattrocchi of fiduciary duties to Marvelay, causing the loss of millions of dollars in property for Marvelay and the dissipation of Marvelay's assets.

245.    The Trustee seeks compensatory damages as against the Abettors in an amount to be determined at trial.

<u>COUNT III</u>
Claim for Preference One Year
– 11 U.S.C. §§ 547, 550(a) and 551

246.    The Trustee repeats and re-alleges the allegations contained in all of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

247.    To the extent this recovery count may be inconsistent with or duplicative of any other count, it is to be treated as being pleaded in the alternative to the extent of the inconsistency or duplication.

248.    Marvelay made the One-Year Preferential Transfers, including those detailed on Exhibits B through D, F and I, on or within one year before the Petition Date.

249.    The One-Year Preferential Transfers were each a transfer of an interest of Marvelay in property.

250.    The One-Year Preferential Transfers were made to or for the benefit of SDG, Camorin, Falken, SC Skydiving, and SDPA (the "One-Year Preference Defendants"), for or

on account of antecedent debt of the One-Year Preference Defendants alleged to be owed by Marvelay before the One-Year Preferential Transfers were made.

251.  The One-Year Preference Defendants are insiders of Marvelay.

252.  The One-Year Preferential Transfers were made while Marvelay was insolvent.

253.  The One-Year Preferential Transfers enabled the One-Year Preference Defendants to receive more than they would receive if the case of Marvelay had been under Chapter 7 of the Bankruptcy Code, the One-Year Preferential Transfers had not been made, and the One-Year Preference Defendants had received payment of such alleged debts to the extent provided by the provisions of the Bankruptcy Code.

254.  Accordingly, pursuant to Sections 547, 550(a) and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the One-Year Preferential Transfers; (b) directing that the One-Year Preferential Transfers be set aside; (c) recovering each of the One-Year Preferential Transfers, or the value thereof, from the applicable One-Year Preference Defendant for the benefit of Marvelay's estate; and (d) any other relief deemed just and appropriate.

<u>COUNT IV</u>
Claim to Avoid and Recover Transfers with Actual Intent
to Hinder, Delay or Defraud
– 11 U.S.C. §§ 544, 548(a)(1)(A), 550(a) and 551, and O.C.G.A. §§ 18-2-74 and 18-2-77

255.  The Trustee repeats and re-alleges the allegations contained in all of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

256.  To the extent this recovery count may be inconsistent with or duplicative of any other count, it is to be treated as being pleaded in the alternative to the extent of the inconsistency or duplication.

257. At all times relevant to the Fraudulent Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against Marvelay, including numerous consumers with state law fraud claims. These claims against Marvelay were and are allowable under Section 502 of the Bankruptcy Code or were and are not allowable only under Section 502(e) of the Bankruptcy Code.

258. During the Relevant Period, Marvelay made the Fraudulent Transfers to the Initial Transferees or Subsequent Transferee Defendants as initial or subsequent transferees.

259. The Fraudulent Transfers were each a transfer of an interest of Marvelay in property within the meaning of sections 101(54) and 548(a) of the Bankruptcy Code.

260. Marvelay made each of the Fraudulent Transfers with actual intent to hinder, delay or defraud creditors of Marvelay to which Marvelay was or became, on or after the date that such transfers were made or such obligations were incurred, indebted.

261. Marvelay did not receive fair consideration in exchange for each of the Fraudulent Transfers.

262. Marvelay was insolvent at the time of the Fraudulent Transfers and/or was rendered insolvent as a result of the Fraudulent Transfers in that Marvelay's total liabilities exceeded the fair value of its assets or Marvelay (i) was engaged in business or a transaction for which any property remaining with Marvelay was an unreasonably small capital at the time of or as a result of the Fraudulent Transfers or (ii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

263. Based upon the foregoing, the Fraudulent Transfers made by Marvelay to the Defendants and the Thirty Red Transferee Defendants constitute avoidable fraudulent transfers pursuant to Section 548 of the Bankruptcy Code and Georgia law.

264.    Accordingly, pursuant to Sections 548(a), 550(a) and 551 of the Bankruptcy Code and/or Sections 18-2-74 and 18-2-77 of the Georgia Code along with Sections 544, 550(a) and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Fraudulent Transfers; (b) directing that the Fraudulent Transfers be set aside; (c) recovering each of the Fraudulent Transfers, or the value thereof, from the applicable Defendant or Thirty Red Transferee Defendant for the benefit of Marvelay's estate; and (d) any other relief deemed just and appropriate.

<u>COUNT V</u>
Claim to Avoid and Recover Constructive Fraudulent Transfers
– 11 U.S.C. §§ 544, 548(b), 550(a) and 551, and O.C.G.A. §§ 18-2-74, 18-2-75 and 18-2-77

265.    The Trustee repeats and re-alleges the allegations contained in all of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

266.    To the extent this recovery count may be inconsistent with or duplicative of any other count, it is to be treated as being pleaded in the alternative to the extent of the inconsistency or duplication.

267.    During the Relevant Period, Marvelay made the Fraudulent Transfers to or for the benefit of Defendants or the Thirty Red Transferee Defendants as initial or subsequent transferees.

268.    At all times relevant to the Fraudulent Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against Marvelay, including numerous consumers with state law fraud claims. These claims against Marvelay were and are allowable under Section 502 of the Bankruptcy Code or were and are not allowable only under Section 502(e) of the Bankruptcy Code.

269.    The Fraudulent Transfers were each a transfer of an interest of Marvelay in property within the meaning of sections 101(54) and 548(a) of the Bankruptcy Code.

270.    Marvelay did not receive fair consideration in exchange for each of the Fraudulent Transfers.

271.    Marvelay was insolvent at the time of the Fraudulent Transfers and/or was rendered insolvent as a result of the Fraudulent Transfers in that Marvelay's total liabilities exceeded the fair value of its assets or Marvelay (i) was engaged in business or a transaction for which any property remaining with Marvelay was an unreasonably small capital at the time of or as a result of the Fraudulent Transfers or (ii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

272.    Based upon the foregoing, the Fraudulent Transfers made by Marvelay to the Defendants and the Thirty Red Transferee Defendants constitute avoidable fraudulent transfers pursuant to Section 548 of the Bankruptcy Code and Georgia law.

273.    Accordingly, pursuant to Sections 548(b), 550(a) and 551 of the Bankruptcy Code and/or Sections 18-2-74, 18-2-75, and 18-2-77 of the Georgia Code along with Sections 544, 550(a) and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Fraudulent Transfers; (b) directing that the Fraudulent Transfers be set aside; (c) recovering each of the Fraudulent Transfers, or the value thereof, from the applicable Defendant or Thirty Red Transferee Defendant for the benefit of Marvelay's estate; and (d) any other relief deemed just and appropriate.

## COUNT VI
Unjust Enrichment

274.    The Trustee repeats and re-alleges the allegations contained in all of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

275.    By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of Marvelay by virtue of, for example, the payment the Payroll Transfers, Amex Transfers, Chase Transfers, Camorin Transfers and use of property and services by the Defendants for which Marvelay was not compensated and received no benefit.

276.    Alternatively, the Defendants are liable to Marvelay for unjust enrichment for millions of dollars of services and property provided by Marvelay to the Defendants for which Marvelay did not receive compensation.

<u>COUNT VII</u>
Quantum Meruit

277.    The Trustee repeats and re-alleges the allegations contained in all of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

278.    By their wrongful acts and omissions, the Defendants received monies at the expense of and to the detriment of Marvelay by virtue of, for example, the payment the Payroll Transfers, Amex Transfers, Chase Transfers, Camorin Transfers and for the use of property and services by the Defendants for which Marvelay did not receive fair compensation.

279.    Alternatively, the Defendants are liable to Marvelay for and Marvelay is entitled to recover from the Defendants the reasonable value of the services it rendered and property it provided for Defendants' benefit.

<u>COUNT VIII</u>
Money Had and Received

280.    The Trustee repeats and re-alleges the allegations contained in all of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

281.    Alternatively, as a result of the use of Marvelay's employees, call center and other property and services, including Marvelay's interest in websites and intellectual property, the Insider Defendants, Affiliated Drop Zone Defendants, and the Affiliated Entity Defendants are currently in possession of, or have control over, money which originated from Marvelay. The Insider Defendants, Affiliated Drop Zone Defendants, and the Affiliated Entity Defendants have no legal or equitable right to this money, having obtained it through fraud and deceit.

282.    In equity and good conscience, the Insider Defendants, Affiliated Drop Zone Defendants, and the Affiliated Entity Defendants may not retain possession or control of this money, which rightfully belongs to Marvelay. The Insider Defendants, Affiliated Drop Zone Defendants, and the Affiliated Entity Defendants are obligated to return all such money to the Trustee.

<u>COUNT IX</u>
Alter Ego and Veil Piercing as Claim or Alternatively as Remedy

283.    The Trustee repeats and re-alleges the allegations contained in all of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

284.    The Insider Defendants through the use of the Affiliated Drop Zone Defendants, Affiliated Entity Defendants and the Concealed Entities have generally disregarded the corporate existence of Marvelay and have made Marvelay a mere instrumentality for the transaction of their fraudulent scheme.

285.    There is such a unity of interest in ownership between the Insider Defendants Affiliated Drop Zone Defendants, Affiliated Entity Defendants and the Concealed Entities and Marvelay that the separate personalities of these defendants and entities no longer exist.

286.    Allowing and upholding the corporate existence of the Marvelay and Defendants or Concealed Entities would promote fraud and injustice.

287.    The corporate existence of separate entities should be disregarded and one or more of the Insider Defendants, the Affiliated Drop Zone Defendants, Affiliated Entity Defendants and the Concealed Entities be recognized as the alter egos of Marvelay and be held liable for Marvelay's debts.

COUNT X
Substantive Consolidation

288.    The Trustee repeats and re-alleges the allegations contained in all of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

289.    Based on the facts outlined above, the Trustee seeks the substantive consolidation of one or more of the Defendants as a remedy for the claims sought herein.

WHEREFORE, Trustee respectfully requests as follows:

(a)    With respect to Count I, that the Trustee is entitled to a judgment against Erran Yearty and Asta Quattrocchi, jointly and severally, for all damages proximately caused by their breach of their fiduciary duties to Marvelay;

(b)    With respect to Count II, that the Trustee is entitled to a judgment against Yvonne Crooks Cline, Chris Surhoff, and Cary Quattrocchi, jointly and severally, for all damages proximately caused by their aiding and abetting the breach of Erran Yearty and Asta Quattrocchi's fiduciary duties to Marvelay;

(c)    With respect to Count III, that pursuant to sections 547, 550, and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment against of Defendants SDG, Camorin, Falken, SC Skydiving, and SDPA: (a) avoiding and preserving the One-Year Preferential Transfers, including those detailed

on Exhibits B through D, F and; (b) directing that the One-Year Fraudulent Transfers be set aside; and (c) recovering the One-Year Fraudulent Transfers, or the value thereof, for the benefit of the estate of Marvelay;

(d)     With respect to Count IV, that pursuant to sections 544, 548, 550, and 551 of the Bankruptcy Code, and O.C.G.A. §§ 18-2-74 and 18-2-77, the Trustee is entitled to a judgment against the Defendants identified on Exhibits A through I and in Paragraph 227 and/or any Defendant who is a Subsequent Transferee thereof, including with respect to the Related Party Defendants and Thirty Red Transferee Defendants, the amounts identified in Paragraphs 206 and 207: (a) avoiding and preserving the Fraudulent Transfers, including those detailed on Exhibits A through I and in Paragraph 227; (b) directing that the Fraudulent Transfers be set aside; and (c) recovering the Fraudulent Transfers, or the value thereof, for the benefit of the estate of Marvelay;

(e)     With respect to Count V, that pursuant to sections 544, 548, 550, and 551 of the Bankruptcy Code, and O.C.G.A. §§ 18-2-74, 18-2-75 and 18-2-77, the Trustee is entitled to a judgment against the Defendants identified on Exhibits A through I and in Paragraph 227 and/or any defendant who is a Subsequent Transferee thereof including with respect to the Related Party Defendants and Thirty Red Transferee Defendants the amounts identified in Paragraphs 206 and 207: (a) avoiding and preserving the Fraudulent Transfers, including those detailed on Exhibits A through I and in Paragraph 227 ; (b) directing that the Fraudulent Transfers be set aside; and (c) recovering the

Fraudulent Transfers, or the value thereof, for the benefit of the estate of Marvelay;

(f)     With respect to Counts VI and VII, the Trustee is entitled to a judgment against one or more of the Defendants in amounts to be determined at trial;

(g)     With respect to Count VIII, the Trustee is entitled to a judgment against one or more of the Insider Defendants, Affiliated Drop Zone Defendants and Affiliated Entity Defendants in amounts to be determined at trial;

(h)     With respect to Count IX, the Trustee is entitled to a judgment declaring that the corporate existence of Marvelay and one or more of the Defendants should be disregarded and that one or more of the Insider Defendants, the Affiliated Drop Zone Defendants, Affiliated Entity Defendants and the Concealed Entities be recognized as the alter egos of Marvelay and be held liable for Marvelay's debts;

(i)     With respect to Count X, that the Trustee is entitled to a judgment substantively consolidating one or more of the Affiliated Drop Zone Defendants and Affiliated Entity Defendants and the Concealed Entities with Marvelay;

(j)     On all claims for relief, establishment of a constructive trust over the proceeds of the transfers in favor of the Trustee for the benefit of Marvelay's estate; and

(k)    Granting the Trustee such other, further, different or alternative relief as may

be just and proper and equitable, including costs.

Respectfully submitted this 8th day of November, 2020.

LAMBERTH, CIFELLI, ELLIS
& NASON, P.A.
*Counsel for Trustee*

By:___*/s/ Gregory D. Ellis*___
Gregory D. Ellis
Georgia Bar No. 245310
gellis@lcenlaw.com

6000 Lake Forrest Drive, N.W., Ste. 435
Atlanta, GA 30328
(404) 262-7373

PORTNOY, GARNER & NAIL, LLC
*Special Counsel for Trustee*

By:___*/s/ Garrett A. Nail*___
Garrett A. Nail
Georgia Bar No. 997924
gnail@pgnlaw.com

3350 Riverwood Pkwy, Suite 460
Atlanta 30339
(404) 688-8800

# EXHIBIT A

## 4DZ LLC D/B/A SKYDIVE ALABAMA, SKYDIVE GEORGIA, SKYDIVE TENNESSEE, AND SOUTH CAROLINA SKYDIVING

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| | | 11/5/2015 | $ 4,720.00 |
| | | 11/12/2015 | $ 1,630.00 |
| | | 11/12/2015 | $ 6,915.00 |
| | | 11/12/2015 | $ 2,115.00 |
| | | 11/20/2015 | $ 1,330.00 |
| | | 11/20/2015 | $ 2,950.00 |
| | | 11/20/2015 | $ 3,347.00 |
| | | 11/30/2015 | $ 1,635.00 |
| | | 12/2/2015 | $ 880.00 |
| | | 12/7/2015 | $ 3,435.00 |
| | | 12/7/2015 | $ 2,835.00 |
| | | 12/10/2015 | $ 3,910.00 |
| | | 12/22/2015 | $ 1,380.00 |
| | | 12/22/2015 | $ 1,610.00 |
| | | 12/29/2015 | $ 4,620.00 |
| | | 12/29/2015 | $ 1,575.00 |
| | | 12/29/2015 | $ 2,185.00 |
| | | 12/29/2015 | $ 2,980.00 |
| | | 1/6/2016 | $ 2,160.00 |
| | | 1/19/2016 | $ 3,210.00 |
| | | 1/25/2016 | $ 4,095.00 |
| | | 2/2/2016 | $ 430.00 |
| | | 2/2/2016 | $ 200.00 |
| | | 2/2/2016 | $ 2,940.00 |
| | | 2/2/2016 | $ 2,065.00 |
| | | 2/2/2016 | $ 1,390.00 |
| | | 2/2/2016 | $ 1,025.00 |
| | | 2/12/2016 | $ 1,230.00 |
| | | 2/16/2016 | $ 2,105.00 |
| | | 2/16/2016 | $ 1,500.00 |
| | | 2/18/2016 | $ 1,660.00 |
| | | 2/19/2016 | $ 3,250.00 |
| | | 3/1/2016 | $ 2,010.00 |
| | | 3/1/2016 | $ 1,225.00 |
| | | 3/2/2016 | $ 1,180.00 |
| | | 3/3/2016 | $ 1,294.00 |
| | | 3/3/2016 | $ 1,412.00 |

# EXHIBIT A

## 4DZ LLC D/B/A SKYDIVE ALABAMA, SKYDIVE GEORGIA, SKYDIVE TENNESSEE, AND SOUTH CAROLINA SKYDIVING

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| | | 3/7/2016 | $ 2,230.00 |
| | | 3/10/2016 | $ 2,830.00 |
| | | 3/14/2016 | $ 2,281.00 |
| | | 3/14/2016 | $ 834.00 |
| | | 3/15/2016 | $ 2,010.00 |
| | | 3/16/2016 | $ 5,100.00 |
| | | 3/23/2016 | $ 1,499.00 |
| | | 3/23/2016 | $ 586.00 |
| | | 3/23/2016 | $ 5,555.00 |
| | | 3/24/2016 | $ 3,320.00 |
| | | 3/30/2016 | $ 1,589.00 |
| | | 3/30/2016 | $ 2,800.00 |
| | | 3/30/2016 | $ 3,019.00 |
| | | 3/30/2016 | $ 6,565.00 |
| | | 4/7/2016 | $ 1,003.00 |
| | | 4/7/2016 | $ 1,600.00 |
| | | 4/7/2016 | $ 1,351.00 |
| | | 4/18/2016 | $ 6,370.00 |
| | | 4/18/2016 | $ 1,660.00 |
| | | 4/18/2016 | $ 5,210.00 |
| | | 4/27/2016 | $ 2,520.00 |
| | | 4/27/2016 | $ 1,290.00 |
| | | 5/4/2016 | $ 913.00 |
| | | 5/4/2016 | $ 2,750.00 |
| | | 5/4/2016 | $ 6,085.00 |
| | | 5/20/2016 | $ 2,186.00 |
| | | 5/20/2016 | $ 2,640.00 |
| | | 5/20/2016 | $ 1,150.00 |
| | | 5/20/2016 | $ 7,640.00 |
| | | 5/27/2016 | $ 248.00 |
| | | 5/27/2016 | $ 4,870.00 |
| | | 5/31/2016 | $ 2,772.00 |
| | | 5/31/2016 | $ 2,810.00 |
| | | 5/31/2016 | $ 835.00 |
| | | 6/3/2016 | $ 755.00 |
| | | 6/3/2016 | $ 5,747.00 |
| | | 6/3/2016 | $ 14,360.00 |

# EXHIBIT A

## 4DZ LLC D/B/A SKYDIVE ALABAMA, SKYDIVE GEORGIA, SKYDIVE TENNESSEE, AND SOUTH CAROLINA SKYDIVING

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| | | 6/13/2016 | $ 496.00 |
| | | 6/13/2016 | $ 1,169.00 |
| | | 6/13/2016 | $ 12,639.00 |
| | | 6/13/2016 | $ 5,245.00 |
| | | 6/17/2016 | $ 248.00 |
| | | 6/17/2016 | $ 1,892.00 |
| | | 6/17/2016 | $ 4,110.00 |
| | | 6/23/2016 | $ 2,968.00 |
| | | 6/24/2016 | $ 676.00 |
| | | 6/24/2016 | $ 2,670.00 |
| | | 6/24/2016 | $ 2,720.00 |
| | | 7/1/2016 | $ 1,373.00 |
| | | 7/1/2016 | $ 4,256.00 |
| | | 7/1/2016 | $ 2,664.00 |
| | | 7/8/2016 | $ 449.00 |
| | | 7/8/2016 | $ 5,826.00 |
| | | 7/8/2016 | $ 3,239.00 |
| | | 7/15/2016 | $ 4,057.00 |
| | | 7/22/2016 | $ 6,040.00 |
| | | 7/22/2016 | $ 670.00 |
| | | 7/26/2016 | $ 586.00 |
| | | 7/29/2016 | $ 2,120.00 |
| | | 8/1/2016 | $ 1,995.00 |
| | | 8/1/2016 | $ 924.00 |
| | | 8/4/2016 | $ 3,230.00 |
| | | 8/10/2016 | $ 636.00 |
| | | 8/10/2016 | $ 726.00 |
| | | 8/10/2016 | $ 4,034.00 |
| | | 8/10/2016 | $ 2,254.00 |
| | | 8/15/2016 | $ 4,530.00 |
| | | 8/19/2016 | $ 4,490.00 |
| | | 8/23/2016 | $ 1,053.00 |
| | | 8/23/2016 | $ 507.00 |
| | | 8/23/2016 | $ 1,035.00 |
| | | 8/23/2016 | $ 1,848.00 |
| | | 9/6/2016 | $ 169.00 |
| | | 9/6/2016 | $ 1,014.00 |

# EXHIBIT A

## 4DZ LLC D/B/A SKYDIVE ALABAMA, SKYDIVE GEORGIA, SKYDIVE TENNESSEE, AND SOUTH CAROLINA SKYDIVING

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| **DATE** | **AMOUNT** | **DATE** | **AMOUNT** |
| | | 9/9/2016 | $ 3,280.00 |
| | | 9/9/2016 | $ 2,439.00 |
| | | 9/9/2016 | $ 1,750.00 |
| | | 9/20/2016 | $ 3,610.00 |
| | | 9/21/2016 | $ 507.00 |
| | | 9/21/2016 | $ 4,181.00 |
| | | 9/21/2016 | $ 338.00 |
| | | 9/30/2016 | $ 586.00 |
| | | 9/30/2016 | $ 3,667.00 |
| | | 10/11/2016 | $ 8,238.00 |
| | | 10/18/2016 | $ 1,093.00 |
| | | 10/18/2016 | $ 1,610.00 |
| | | 10/27/2016 | $ 3,880.00 |
| | | 10/27/2016 | $ 500.00 |
| | | 10/28/2016 | $ 1,988.00 |
| | | 11/7/2016 | $ 1,758.00 |
| | | 11/14/2016 | $ 2,010.00 |
| | | 11/14/2016 | $ 3,460.00 |
| | | 11/15/2016 | $ 2,067.00 |
| | | 11/15/2016 | $ 528.00 |
| | | 11/15/2016 | $ 4,065.00 |
| | | 11/17/2016 | $ 4,520.00 |
| | | 11/21/2016 | $ 4,720.00 |
| | | 11/22/2016 | $ 2,260.00 |
| | | 11/22/2016 | $ 1,172.00 |
| | | 12/1/2016 | $ 2,500.00 |
| | | 12/6/2016 | $ 496.00 |
| | | 12/6/2016 | $ 496.00 |
| | | 12/6/2016 | $ 338.00 |
| | | 12/9/2016 | $ 3,740.00 |
| | | 12/9/2016 | $ 1,730.00 |
| | | 12/15/2016 | $ 200.00 |
| | | 12/15/2016 | $ 845.00 |
| | | 12/30/2016 | $ 248.00 |
| | | 12/30/2016 | $ 500.00 |
| | | 12/30/2016 | $ 787.00 |
| | | 1/17/2017 | $ 600.00 |

# EXHIBIT A

## 4DZ LLC D/B/A SKYDIVE ALABAMA, SKYDIVE GEORGIA, SKYDIVE TENNESSEE, AND SOUTH CAROLINA SKYDIVING

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| **DATE** | **AMOUNT** | **DATE** | **AMOUNT** |
|  |  |  |  |
| **TOTAL** | $            - | **TOTAL** | $      372,681.00 |

# EXHIBIT B

## SOUTH CAROLINA SKYDIVING, LLC (d/b/a SC SKYDIVING, SOUTH CAROLINA SKYDIVING)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| **DATE** | **AMOUNT** | **DATE** | **AMOUNT** |
| 11/21/2017 | $ 2,325.00 | 8/22/2016 | $ 8,898.00 |
| 11/21/2017 | $ 1,825.00 | 8/22/2016 | $ 10,234.00 |
| 12/5/2017 | $ 2,680.00 | 9/12/2016 | $ 14,179.00 |
| 12/11/2017 | $ 1,180.00 | 9/12/2016 | $ 290.00 |
| 12/29/2017 | $ 2,500.00 | 9/20/2016 | $ 4,011.00 |
| 12/29/2017 | $ 1,560.00 | 9/27/2016 | $ 3,692.00 |
| 3/2/2018 | $ 895.00 | 10/4/2016 | $ 5,493.00 |
| 3/2/2018 | $ 140.00 | 10/12/2016 | $ 4,514.00 |
| 3/19/2018 | $ 829.00 | 10/21/2016 | $ 5,268.00 |
| 3/26/2018 | $ 449.00 | 10/21/2016 | $ 5,562.00 |
| 4/11/2018 | $ 290.00 | 10/28/2016 | $ 6,539.00 |
| 4/23/2018 | $ 589.00 | 11/15/2016 | $ 3,794.00 |
| 5/1/2018 | $ 838.00 | 11/15/2016 | $ 1,209.00 |
| 5/9/2018 | $ 3,252.00 | 11/22/2016 | $ 918.00 |
| 5/16/2018 | $ 500.00 | 12/1/2016 | $ 2,581.14 |
| 5/29/2018 | $ 951.00 | 12/19/2016 | $ 2,796.00 |
| 6/12/2018 | $ 1,273.00 | 1/3/2017 | $ 420.00 |
| 6/12/2018 | $ 2,227.00 | 1/17/2017 | $ 758.00 |
| 6/26/2018 | $ 1,147.00 | 1/30/2017 | $ 1,146.00 |
| 7/3/2018 | $ 1,067.00 | 2/13/2017 | $ 1,222.00 |
| 7/17/2018 | $ 2,534.00 | 2/21/2017 | $ 1,236.00 |
| 8/14/2018 | $ 140.00 | 2/23/2017 | $ 1,656.00 |
| 8/14/2018 | $ 860.00 | 3/15/2017 | $ 2,219.00 |
| 9/4/2018 | $ 1,316.00 | 3/28/2017 | $ 2,412.00 |
| 10/2/2018 | $ 898.00 | 3/31/2017 | $ 8,032.00 |
| 10/2/2018 | $ 949.00 | 4/7/2017 | $ 1,132.00 |
| 10/9/2018 | $ 1,095.00 | 4/21/2017 | $ 3,189.00 |
| 11/8/2018 | $ 1,480.00 | 4/25/2017 | $ 1,727.00 |
| 11/8/2018 | $ 1,480.00 | 5/2/2017 | $ 3,512.00 |
| 11/8/2018 | $ 560.00 | 5/16/2017 | $ 1,807.00 |
| | | 5/16/2017 | $ 2,608.00 |
| | | 5/22/2017 | $ 2,401.00 |
| | | 5/30/2017 | $ 2,419.00 |
| | | 6/8/2017 | $ 2,409.00 |
| | | 6/13/2017 | $ 2,072.00 |
| | | 6/21/2017 | $ 2,192.00 |
| | | 6/26/2017 | $ 2,595.00 |

# EXHIBIT B

## SOUTH CAROLINA SKYDIVING, LLC (d/b/a SC SKYDIVING, SOUTH CAROLINA SKYDIVING)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| | | 6/30/2017 | $ 2,023.00 |
| | | 7/10/2017 | $ 3,819.00 |
| | | 7/24/2017 | $ 6,869.00 |
| | | 8/1/2017 | $ 6,240.00 |
| | | 8/9/2017 | $ 3,635.00 |
| | | 8/15/2017 | $ 2,463.00 |
| | | 8/28/2017 | $ 2,327.00 |
| | | 8/28/2017 | $ 4,697.00 |
| | | 9/12/2017 | $ 840.00 |
| | | 9/12/2017 | $ 3,089.00 |
| | | 9/18/2017 | $ 1,120.00 |
| | | 9/27/2017 | $ 2,538.00 |
| | | 10/2/2017 | $ 3,199.00 |
| | | 10/17/2017 | $ 1,120.00 |
| | | 10/17/2017 | $ 1,594.00 |
| | | 10/23/2017 | $ 3,563.00 |
| | | 10/31/2017 | $ 2,400.00 |
| | | 11/6/2017 | $ 1,120.00 |
| | | 11/21/2017 | $ 2,325.00 |
| | | 11/21/2017 | $ 1,825.00 |
| | | 12/5/2017 | $ 2,680.00 |
| | | 12/11/2017 | $ 1,180.00 |
| | | 12/29/2017 | $ 2,500.00 |
| | | 12/29/2017 | $ 1,560.00 |
| | | 3/2/2018 | $ 895.00 |
| | | 3/2/2018 | $ 140.00 |
| | | 3/19/2018 | $ 829.00 |
| | | 3/26/2018 | $ 449.00 |
| | | 4/11/2018 | $ 290.00 |
| | | 4/23/2018 | $ 589.00 |
| | | 5/1/2018 | $ 838.00 |
| | | 5/9/2018 | $ 3,252.00 |
| | | 5/16/2018 | $ 500.00 |
| | | 5/29/2018 | $ 951.00 |
| | | 6/12/2018 | $ 1,273.00 |
| | | 6/12/2018 | $ 2,227.00 |
| | | 6/26/2018 | $ 1,147.00 |

# EXHIBIT B

## SOUTH CAROLINA SKYDIVING, LLC (d/b/a SC SKYDIVING, SOUTH CAROLINA SKYDIVING)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| | | 7/3/2018 | $ 1,067.00 |
| | | 7/17/2018 | $ 2,534.00 |
| | | 8/14/2018 | $ 140.00 |
| | | 8/14/2018 | $ 860.00 |
| | | 9/4/2018 | $ 1,316.00 |
| | | 10/2/2018 | $ 898.00 |
| | | 10/2/2018 | $ 949.00 |
| | | 10/9/2018 | $ 1,095.00 |
| | | 11/8/2018 | $ 1,480.00 |
| | | 11/8/2018 | $ 1,480.00 |
| | | 11/8/2018 | $ 560.00 |
| | | | |
| | | | |
| TOTAL | $ 37,829.00 | TOTAL | $ 217,627.14 |

# EXHIBIT C

## SDG, LLC (d/b/a SKYDIVE ALABAMA, SKYDIVE GEORGIA, SKYDIVE TENNESSEE)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| 11/13/2017 | $ 557.00 | 1/27/2017 | $ 4,585.00 |
| 11/13/2017 | $ 600.00 | 2/8/2017 | $ 715.00 |
| 11/13/2017 | $ 665.00 | 2/8/2017 | $ 360.00 |
| 11/21/2017 | $ 956.00 | 2/8/2017 | $ 2,355.00 |
| 11/21/2017 | $ 590.00 | 2/27/2017 | $ 248.00 |
| 11/21/2017 | $ 2,106.00 | 2/27/2017 | $ 5,305.00 |
| 11/27/2017 | $ 816.00 | 2/27/2017 | $ 320.00 |
| 11/28/2017 | $ 449.00 | 2/27/2017 | $ 2,835.00 |
| 11/28/2017 | $ 1,025.00 | 2/27/2017 | $ 586.00 |
| 12/4/2017 | $ 2,865.00 | 2/27/2017 | $ 1,362.00 |
| 12/4/2017 | $ 2,408.00 | 3/13/2017 | $ 1,283.00 |
| 12/12/2017 | $ 755.00 | 3/13/2017 | $ 3,640.00 |
| 12/12/2017 | $ 359.00 | 3/13/2017 | $ 705.00 |
| 12/12/2017 | $ 1,010.00 | 3/13/2017 | $ 1,521.00 |
| 12/12/2017 | $ 755.00 | 3/13/2017 | $ 1,383.00 |
| 1/3/2018 | $ 140.00 | 3/24/2017 | $ 6,330.00 |
| 1/3/2018 | $ 440.00 | 3/24/2017 | $ 3,528.00 |
| 1/3/2018 | $ 715.00 | 3/24/2017 | $ 4,389.00 |
| 1/3/2018 | $ 726.00 | 4/4/2017 | $ 744.00 |
| 1/25/2018 | $ 496.00 | 4/4/2017 | $ 5,150.00 |
| 1/25/2018 | $ 395.00 | 4/19/2017 | $ 4,035.00 |
| 1/25/2018 | $ 640.00 | 4/19/2017 | $ 2,605.00 |
| 1/25/2018 | $ 467.00 | 4/20/2017 | $ 924.00 |
| 1/25/2018 | $ 668.00 | 4/20/2017 | $ 618.00 |
| 2/26/2018 | $ 875.00 | 4/20/2017 | $ 676.00 |
| 2/26/2018 | $ 800.00 | 4/20/2017 | $ 417.00 |
| 2/26/2018 | $ 894.25 | 4/26/2017 | $ 1,668.00 |
| 3/13/2018 | $ 280.00 | 4/26/2017 | $ 2,305.00 |
| 3/13/2018 | $ 1,110.00 | 5/3/2017 | $ 5,095.00 |
| 3/13/2018 | $ 1,600.00 | 5/10/2017 | $ 2,230.00 |
| 3/13/2018 | $ 355.00 | 5/10/2017 | $ 2,416.00 |
| 3/13/2018 | $ 449.00 | 5/16/2017 | $ 2,530.00 |
| 3/28/2018 | $ 4,550.00 | 5/26/2017 | $ 697.00 |
| 3/28/2018 | $ 140.00 | 5/26/2017 | $ 589.00 |
| 3/28/2018 | $ 1,204.00 | 5/26/2017 | $ 4,280.00 |
| 4/6/2018 | $ 248.00 | 5/26/2017 | $ 2,523.00 |
| 4/6/2018 | $ 235.00 | 5/26/2017 | $ 10,401.00 |
| 4/6/2018 | $ 3,490.00 | 6/6/2017 | $ 3,360.00 |

# EXHIBIT C

## SDG, LLC (d/b/a SKYDIVE ALABAMA, SKYDIVE GEORGIA, SKYDIVE TENNESSEE)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| 4/6/2018 | $ 496.00 | 6/19/2017 | $ 1,420.00 |
| 4/18/2018 | $ 338.00 | 6/19/2017 | $ 467.00 |
| 4/18/2018 | $ 790.00 | 6/19/2017 | $ 5,185.00 |
| 4/18/2018 | $ 417.00 | 6/19/2017 | $ 3,630.00 |
| 5/2/2018 | $ 496.00 | 6/23/2017 | $ 676.00 |
| 5/2/2018 | $ 950.00 | 6/23/2017 | $ 2,615.00 |
| 5/2/2018 | $ 1,750.00 | 6/23/2017 | $ 5,989.00 |
| 5/2/2018 | $ 676.00 | 6/30/2017 | $ 3,355.00 |
| 5/8/2018 | $ 1,758.00 | 7/21/2017 | $ 1,067.00 |
| 5/8/2018 | $ 895.00 | 7/21/2017 | $ 4,450.00 |
| 5/14/2018 | $ 780.00 | 7/21/2017 | $ 6,095.00 |
| 5/21/2018 | $ 3,250.00 | 7/21/2017 | $ 6,024.00 |
| 5/21/2018 | $ 2,293.00 | 7/24/2017 | $ 1,492.00 |
| 6/1/2018 | $ 1,679.00 | 7/24/2017 | $ 9,105.00 |
| 6/1/2018 | $ 4,205.00 | 7/24/2017 | $ 338.00 |
| 6/1/2018 | $ 2,590.00 | 7/28/2017 | $ 1,578.00 |
| 6/1/2018 | $ 3,257.00 | 7/28/2017 | $ 6,125.00 |
| 6/1/2018 | $ 1,431.00 | 7/28/2017 | $ 3,099.00 |
| 6/11/2018 | $ 586.00 | 8/4/2017 | $ 478.00 |
| 6/11/2018 | $ 2,070.00 | 8/4/2017 | $ 4,640.00 |
| 6/11/2018 | $ 1,898.00 | 8/4/2017 | $ 5,396.00 |
| 6/28/2018 | $ 1,262.00 | 8/16/2017 | $ 528.00 |
| 6/28/2018 | $ 2,775.00 | 8/22/2017 | $ 927.00 |
| 6/28/2018 | $ 3,688.00 | 8/22/2017 | $ 12,860.00 |
| 7/10/2018 | $ 507.00 | 8/29/2017 | $ 586.00 |
| 7/10/2018 | $ 5,220.00 | 8/29/2017 | $ 4,380.00 |
| 7/10/2018 | $ 5,826.00 | 8/29/2017 | $ 14,505.00 |
| 7/23/2018 | $ 845.00 | 9/13/2017 | $ 1,014.00 |
| 7/23/2018 | $ 2,390.00 | 9/13/2017 | $ 2,095.00 |
| 7/23/2018 | $ 676.00 | 9/13/2017 | $ 1,441.00 |
| 7/24/2018 | $ 5,826.00 | 9/13/2017 | $ 1,768.00 |
| 7/27/2018 | $ 338.00 | 9/20/2017 | $ 449.00 |
| 7/27/2018 | $ 3,150.00 | 9/20/2017 | $ 5,650.00 |
| 7/27/2018 | $ 4,231.00 | 9/22/2017 | $ 697.00 |
| 8/8/2018 | $ 3,565.00 | 9/22/2017 | $ 2,690.00 |
| 8/8/2018 | $ 3,910.00 | 9/22/2017 | $ 4,154.00 |
| 8/10/2018 | $ 1,352.00 | 10/17/2017 | $ 1,211.00 |
| 8/10/2018 | $ 2,060.00 | 10/17/2017 | $ 1,409.00 |

# EXHIBIT C

## SDG, LLC (d/b/a SKYDIVE ALABAMA, SKYDIVE GEORGIA, SKYDIVE TENNESSEE)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| 8/10/2018 | $ 169.00 | 10/17/2017 | $ 2,195.00 |
| 8/22/2018 | $ 338.00 | 10/17/2017 | $ 1,505.00 |
| 8/22/2018 | $ 2,350.00 | 10/17/2017 | $ 5,219.00 |
| 8/22/2018 | $ 3,616.00 | 10/25/2017 | $ 1,175.00 |
| 8/28/2018 | $ 248.00 | 11/1/2017 | $ 1,420.00 |
| 8/28/2018 | $ 3,095.00 | 11/1/2017 | $ 1,840.00 |
| 8/28/2018 | $ 744.00 | 11/3/2017 | $ 1,390.00 |
| 9/7/2018 | $ 327.00 | 11/3/2017 | $ 2,851.00 |
| 9/7/2018 | $ 2,475.00 | 11/6/2017 | $ 1,110.00 |
| 9/10/2018 | $ 496.00 | 11/6/2017 | $ 2,774.00 |
| 9/10/2018 | $ 3,490.00 | 11/13/2017 | $ 557.00 |
| 9/18/2018 | $ 1,740.00 | 11/13/2017 | $ 600.00 |
| 9/18/2018 | $ 3,030.00 | 11/13/2017 | $ 665.00 |
| 10/2/2018 | $ 338.00 | 11/21/2017 | $ 956.00 |
| 10/2/2018 | $ 2,830.00 | 11/21/2017 | $ 590.00 |
| 10/2/2018 | $ 2,030.00 | 11/21/2017 | $ 2,106.00 |
| 10/2/2018 | $ 1,948.00 | 11/27/2017 | $ 816.00 |
| 10/2/2018 | $ 557.00 | 11/28/2017 | $ 449.00 |
| 10/12/2018 | $ 1,315.00 | 11/28/2017 | $ 1,025.00 |
| 10/12/2018 | $ 4,580.00 | 12/4/2017 | $ 2,865.00 |
| 10/12/2018 | $ 1,452.00 | 12/4/2017 | $ 2,408.00 |
| 10/12/2018 | $ 2,096.00 | 12/12/2017 | $ 755.00 |
| 10/19/2018 | $ 1,920.00 | 12/12/2017 | $ 359.00 |
| 10/19/2018 | $ 496.00 | 12/12/2017 | $ 1,010.00 |
| 11/1/2018 | $ 248.00 | 12/12/2017 | $ 755.00 |
| 11/1/2018 | $ 855.00 | 1/3/2018 | $ 140.00 |
| 11/1/2018 | $ 913.00 | 1/3/2018 | $ 440.00 |
| 11/6/2018 | $ 169.00 | 1/3/2018 | $ 715.00 |
| 11/6/2018 | $ 580.00 | 1/3/2018 | $ 726.00 |
| | | 1/25/2018 | $ 496.00 |
| | | 1/25/2018 | $ 395.00 |
| | | 1/25/2018 | $ 640.00 |
| | | 1/25/2018 | $ 467.00 |
| | | 1/25/2018 | $ 668.00 |
| | | 2/26/2018 | $ 875.00 |
| | | 2/26/2018 | $ 800.00 |
| | | 2/26/2018 | $ 894.25 |
| | | 3/13/2018 | $ 280.00 |

# EXHIBIT C

## SDG, LLC (d/b/a SKYDIVE ALABAMA, SKYDIVE GEORGIA, SKYDIVE TENNESSEE)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| | | 3/13/2018 | $ 1,110.00 |
| | | 3/13/2018 | $ 1,600.00 |
| | | 3/13/2018 | $ 355.00 |
| | | 3/13/2018 | $ 449.00 |
| | | 3/28/2018 | $ 4,550.00 |
| | | 3/28/2018 | $ 140.00 |
| | | 3/28/2018 | $ 1,204.00 |
| | | 4/6/2018 | $ 248.00 |
| | | 4/6/2018 | $ 235.00 |
| | | 4/6/2018 | $ 3,490.00 |
| | | 4/6/2018 | $ 496.00 |
| | | 4/18/2018 | $ 338.00 |
| | | 4/18/2018 | $ 790.00 |
| | | 4/18/2018 | $ 417.00 |
| | | 5/2/2018 | $ 496.00 |
| | | 5/2/2018 | $ 950.00 |
| | | 5/2/2018 | $ 1,750.00 |
| | | 5/2/2018 | $ 676.00 |
| | | 5/8/2018 | $ 1,758.00 |
| | | 5/8/2018 | $ 895.00 |
| | | 5/14/2018 | $ 780.00 |
| | | 5/21/2018 | $ 3,250.00 |
| | | 5/21/2018 | $ 2,293.00 |
| | | 6/1/2018 | $ 1,679.00 |
| | | 6/1/2018 | $ 4,205.00 |
| | | 6/1/2018 | $ 2,590.00 |
| | | 6/1/2018 | $ 3,257.00 |
| | | 6/1/2018 | $ 1,431.00 |
| | | 6/11/2018 | $ 586.00 |
| | | 6/11/2018 | $ 2,070.00 |
| | | 6/11/2018 | $ 1,898.00 |
| | | 6/28/2018 | $ 1,262.00 |
| | | 6/28/2018 | $ 2,775.00 |
| | | 6/28/2018 | $ 3,688.00 |
| | | 7/10/2018 | $ 507.00 |
| | | 7/10/2018 | $ 5,220.00 |
| | | 7/10/2018 | $ 5,826.00 |
| | | 7/23/2018 | $ 845.00 |

# EXHIBIT C

## SDG, LLC (d/b/a SKYDIVE ALABAMA, SKYDIVE GEORGIA, SKYDIVE TENNESSEE)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| | | 7/23/2018 | $ 2,390.00 |
| | | 7/23/2018 | $ 676.00 |
| | | 7/24/2018 | $ 5,826.00 |
| | | 7/27/2018 | $ 338.00 |
| | | 7/27/2018 | $ 3,150.00 |
| | | 7/27/2018 | $ 4,231.00 |
| | | 8/8/2018 | $ 3,565.00 |
| | | 8/8/2018 | $ 3,910.00 |
| | | 8/10/2018 | $ 1,352.00 |
| | | 8/10/2018 | $ 2,060.00 |
| | | 8/10/2018 | $ 169.00 |
| | | 8/22/2018 | $ 338.00 |
| | | 8/22/2018 | $ 2,350.00 |
| | | 8/22/2018 | $ 3,616.00 |
| | | 8/28/2018 | $ 248.00 |
| | | 8/28/2018 | $ 3,095.00 |
| | | 8/28/2018 | $ 744.00 |
| | | 9/7/2018 | $ 327.00 |
| | | 9/7/2018 | $ 2,475.00 |
| | | 9/10/2018 | $ 496.00 |
| | | 9/10/2018 | $ 3,490.00 |
| | | 9/18/2018 | $ 1,740.00 |
| | | 9/18/2018 | $ 3,030.00 |
| | | 10/2/2018 | $ 338.00 |
| | | 10/2/2018 | $ 2,830.00 |
| | | 10/2/2018 | $ 2,030.00 |
| | | 10/2/2018 | $ 1,948.00 |
| | | 10/2/2018 | $ 557.00 |
| | | 10/12/2018 | $ 1,315.00 |
| | | 10/12/2018 | $ 4,580.00 |
| | | 10/12/2018 | $ 1,452.00 |
| | | 10/12/2018 | $ 2,096.00 |
| | | 10/19/2018 | $ 1,920.00 |
| | | 10/19/2018 | $ 496.00 |
| | | 11/1/2018 | $ 248.00 |
| | | 11/1/2018 | $ 855.00 |
| | | 11/1/2018 | $ 913.00 |
| | | 11/6/2018 | $ 169.00 |

# EXHIBIT C

## SDG, LLC (d/b/a SKYDIVE ALABAMA, SKYDIVE GEORGIA, SKYDIVE TENNESSEE)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| **DATE** | **AMOUNT** | **DATE** | **AMOUNT** |
| | | 11/6/2018 | $ 580.00 |
| | | | |
| | $ 161,504.25 | | $ 407,284.25 |

# EXHIBIT D

## SDPA, LLC (d/b/a SKYDIVE PHILADELPHIA)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| 11/20/2017 | $ 27,580.00 | 8/29/2016 | $ 17,245.00 |
| 11/20/2017 | $ 7,895.00 | 8/29/2016 | $ 19,894.00 |
| 11/30/2017 | $ 36,947.50 | 9/6/2016 | $ 17,030.00 |
| 12/18/2017 | $ 1,900.00 | 9/6/2016 | $ 8,710.00 |
| 12/29/2017 | $ 12,080.00 | 9/15/2016 | $ 19,390.00 |
| 1/12/2018 | $ 9,085.00 | 9/26/2016 | $ 19,585.00 |
| 1/18/2018 | $ 1,405.00 | 9/26/2016 | $ 13,090.00 |
| 3/27/2018 | $ 12,570.00 | 9/26/2016 | $ 15,940.00 |
| 5/7/2018 | $ 8,975.00 | 9/26/2016 | $ 4,620.00 |
| 5/7/2018 | $ 8,560.00 | 9/29/2016 | $ 5,460.00 |
| 5/21/2018 | $ 4,796.00 | 10/4/2016 | $ 21,580.00 |
| 6/4/2018 | $ 3,679.00 | 10/4/2016 | $ 12,044.00 |
| 6/14/2018 | $ 42,855.00 | 10/17/2016 | $ 8,385.00 |
| 7/5/2018 | $ 6,153.00 | 10/17/2016 | $ 12,490.00 |
| 7/17/2018 | $ 7,220.00 | 10/24/2016 | $ 6,215.00 |
| 7/27/2018 | $ 4,524.00 | 10/24/2016 | $ 18,775.00 |
| 8/1/2018 | $ 11,423.00 | 10/24/2016 | $ 4,910.00 |
| 8/8/2018 | $ 89,464.00 | 11/10/2016 | $ 9,160.00 |
| 8/13/2018 | $ 3,940.00 | 11/10/2016 | $ 3,025.00 |
| 8/21/2018 | $ 3,718.00 | 11/23/2016 | $ 4,080.00 |
| 8/29/2018 | $ 1,407.00 | 11/23/2016 | $ 3,600.00 |
| 9/5/2018 | $ 3,346.00 | 11/23/2016 | $ 4,295.00 |
| 9/13/2018 | $ 7,233.00 | 12/2/2016 | $ 6,110.00 |
| 9/26/2018 | $ 57,105.00 | 12/2/2016 | $ 1,040.00 |
| 10/22/2018 | $ 3,388.00 | 12/8/2016 | $ 660.00 |
| 10/22/2018 | $ 4,225.00 | 12/22/2016 | $ 1,880.00 |
| 10/30/2018 | $ 5,717.00 | 12/28/2016 | $ 280.00 |
| | | 1/31/2017 | $ 445.00 |
| | | 2/23/2017 | $ 1,140.00 |
| | | 3/23/2017 | $ 10,900.00 |
| | | 4/24/2017 | $ 22,655.00 |
| | | 4/24/2017 | $ 990.00 |
| | | 5/8/2017 | $ 1,300.00 |
| | | 5/22/2017 | $ 57,264.00 |
| | | 6/12/2017 | $ 29,575.00 |
| | | 6/12/2017 | $ 1,740.00 |
| | | 6/13/2017 | $ 3,640.00 |

# EXHIBIT D

## SDPA, LLC (d/b/a SKYDIVE PHILADELPHIA)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| | | 6/23/2017 | $ 33,475.00 |
| | | 6/26/2017 | $ 656.00 |
| | | 6/29/2017 | $ 11,375.00 |
| | | 6/29/2017 | $ 30,180.00 |
| | | 7/11/2017 | $ 1,400.00 |
| | | 7/13/2017 | $ 13,090.00 |
| | | 7/24/2017 | $ 4,540.00 |
| | | 7/24/2017 | $ 41,365.00 |
| | | 7/24/2017 | $ 8,635.00 |
| | | 8/7/2017 | $ 35,980.00 |
| | | 8/7/2017 | $ 5,925.00 |
| | | 8/24/2017 | $ 16,936.00 |
| | | 8/24/2017 | $ 5,445.00 |
| | | 8/24/2017 | $ 16,640.00 |
| | | 8/24/2017 | $ 575.00 |
| | | 9/11/2017 | $ 19,355.00 |
| | | 9/11/2017 | $ 12,395.00 |
| | | 9/18/2017 | $ 6,644.00 |
| | | 9/25/2017 | $ 16,740.00 |
| | | 10/2/2017 | $ 7,510.00 |
| | | 11/20/2017 | $ 27,580.00 |
| | | 11/20/2017 | $ 7,895.00 |
| | | 11/30/2017 | $ 36,947.50 |
| | | 12/18/2017 | $ 1,900.00 |
| | | 12/29/2017 | $ 12,080.00 |
| | | 1/12/2018 | $ 9,085.00 |
| | | 1/18/2018 | $ 1,405.00 |
| | | 3/27/2018 | $ 12,570.00 |
| | | 5/7/2018 | $ 8,975.00 |
| | | 5/7/2018 | $ 8,560.00 |
| | | 5/21/2018 | $ 4,796.00 |
| | | 6/4/2018 | $ 3,679.00 |
| | | 6/14/2018 | $ 42,855.00 |
| | | 7/5/2018 | $ 6,153.00 |
| | | 7/17/2018 | $ 7,220.00 |
| | | 7/27/2018 | $ 4,524.00 |
| | | 8/1/2018 | $ 11,423.00 |

# EXHIBIT D

## SDPA, LLC (d/b/a SKYDIVE PHILADELPHIA)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| **DATE** | **AMOUNT** | DATE | **AMOUNT** |
| | | 8/8/2018 | $ 89,464.00 |
| | | 8/13/2018 | $ 3,940.00 |
| | | 8/21/2018 | $ 3,718.00 |
| | | 8/29/2018 | $ 1,407.00 |
| | | 9/5/2018 | $ 3,346.00 |
| | | 9/13/2018 | $ 7,233.00 |
| | | 9/26/2018 | $ 57,105.00 |
| | | 10/22/2018 | $ 3,388.00 |
| | | 10/22/2018 | $ 4,225.00 |
| | | 10/30/2018 | $ 5,717.00 |
| | | | |
| | | | |
| | | | |
| TOTAL | $ 387,190.50 | TOTAL | $ 1,065,193.50 |

# EXHIBIT E

## WIND FAVOR, LLC (d/b/a SKYDIVE PHILADELPHIA)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| | | 11/2/2015 | $ 3,595.00 |
| | | 11/2/2015 | $ 11,925.00 |
| | | 11/10/2015 | $ 140.00 |
| | | 11/24/2015 | $ 1,215.00 |
| | | 11/24/2015 | $ 4,250.00 |
| | | 12/1/2015 | $ 3,020.00 |
| | | 12/1/2015 | $ 10,535.00 |
| | | 12/8/2015 | $ 3,990.00 |
| | | 12/16/2015 | $ 7,390.00 |
| | | 12/16/2015 | $ 2,525.00 |
| | | 12/31/2015 | $ 1,965.00 |
| | | 12/31/2015 | $ 6,390.00 |
| | | 12/31/2015 | $ 420.00 |
| | | 1/5/2016 | $ 2,930.00 |
| | | 1/5/2016 | $ 2,825.00 |
| | | 1/20/2016 | $ 395.00 |
| | | 2/11/2016 | $ 1,100.00 |
| | | 2/11/2016 | $ 330.00 |
| | | 2/24/2016 | $ 5,555.00 |
| | | 3/2/2016 | $ 18,200.00 |
| | | 3/2/2016 | $ 4,820.00 |
| | | 3/10/2016 | $ 88.98 |
| | | 3/10/2016 | $ 3,880.00 |
| | | 3/14/2016 | $ 5,545.00 |
| | | 3/24/2016 | $ 5,615.00 |
| | | 3/28/2016 | $ 6,095.00 |
| | | 4/4/2016 | $ 10,470.00 |
| | | 4/6/2016 | $ 85.98 |
| | | 4/11/2016 | $ 1,259.02 |
| | | 4/11/2016 | $ 8,785.00 |
| | | 4/19/2016 | $ 7,195.00 |
| | | 4/25/2016 | $ 11,805.00 |
| | | 5/3/2016 | $ 11,210.00 |
| | | 5/3/2016 | $ 6,710.00 |
| | | 5/10/2016 | $ 13,490.00 |
| | | 5/23/2016 | $ 8,190.00 |
| | | 5/23/2016 | $ 6,725.00 |

# EXHIBIT E

## WIND FAVOR, LLC (d/b/a SKYDIVE PHILADELPHIA)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| **DATE** | **AMOUNT** | DATE | **AMOUNT** |
| | | 5/31/2016 | $ 11,625.00 |
| | | 6/7/2016 | $ 10,090.00 |
| | | 6/13/2016 | $ 2,745.00 |
| | | 6/13/2016 | $ 15,370.00 |
| | | 6/20/2016 | $ 14,625.00 |
| | | 6/20/2016 | $ 4,100.00 |
| | | 6/27/2016 | $ 15,045.00 |
| | | 6/27/2016 | $ 8,840.00 |
| | | 7/7/2016 | $ 7,400.00 |
| | | 7/7/2016 | $ 7,400.00 |
| | | 7/7/2016 | $ 14,510.00 |
| | | 7/18/2016 | $ 19,390.00 |
| | | 7/18/2016 | $ 18,675.00 |
| | | 8/1/2016 | $ 4,335.00 |
| | | 8/1/2016 | $ 14,315.00 |
| | | 8/1/2016 | $ 2,735.00 |
| | | 8/1/2016 | $ 17,104.00 |
| | | 8/10/2016 | $ 15,905.00 |
| | | 8/10/2016 | $ 3,865.00 |
| | | | |
| | | | |
| | | | |
| TOTAL | $ - | TOTAL | $ 408,737.98 |

# EXHIBIT F
# CAMORIN, LLC

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| 11/22/2017 | $ 24,421.79 | 12/15/2014 | $ 56,616.71 |
| 2/1/2018 | $ 8,158.19 | 11/12/2015 | $ 8,241.50 |
| 3/2/2018 | $ 8,158.19 | 12/28/2015 | $ 8,241.50 |
| 6/29/2018 | $ 8,158.19 | 12/28/2015 | $ 8,241.50 |
| 6/29/2018 | $ 8,158.19 | 1/8/2016 | $ 8,241.50 |
| 6/29/2018 | $ 8,158.19 | 2/25/2016 | $ 16,483.00 |
| 7/20/2018 | $ 8,158.19 | 2/25/2016 | $ 8,241.50 |
| 9/10/2018 | $ 8,158.19 | 3/11/2016 | $ 8,241.50 |
| 9/10/2018 | $ 8,158.19 | 4/4/2016 | $ 8,241.50 |
| | | 5/10/2016 | $ 8,241.50 |
| | | 6/3/2016 | $ 8,241.50 |
| | | 7/14/2016 | $ 8,241.50 |
| | | 11/4/2016 | $ 8,241.50 |
| | | 2/13/2017 | $ 8,241.50 |
| | | 2/13/2017 | $ 8,241.50 |
| | | 2/13/2017 | $ 8,241.50 |
| | | 2/13/2017 | $ 8,241.50 |
| | | 3/13/2017 | $ 8,241.50 |
| | | 6/23/2017 | $ 12,319.30 |
| | | 6/23/2017 | $ 8,241.50 |
| | | 7/14/2017 | $ 12,319.30 |
| | | 7/31/2017 | $ 12,319.30 |
| | | 9/11/2017 | $ 12,319.30 |
| | | 10/12/2017 | $ 24,421.79 |
| | | 11/22/2017 | $ 24,421.79 |
| | | 2/1/2018 | $ 8,158.19 |
| | | 3/2/2018 | $ 8,158.19 |
| | | 6/29/2018 | $ 8,158.19 |
| | | 6/29/2018 | $ 8,158.19 |
| | | 6/29/2018 | $ 8,158.19 |
| | | 7/20/2018 | $ 8,158.19 |
| | | 9/10/2018 | $ 8,158.19 |
| | | 9/10/2018 | $ 8,158.19 |
| TOTAL | $ 89,687.31 | TOTAL | $ 376,591.51 |

# EXHIBIT G

## TRANSFERS TO EMPLOYEES THROUGH ADP ACCOUNT ENDING IN XXXX-5268

| Date of Transfer | Amount |
|---|---|
| | |
| | |
| 11/14/2014 | $24,007.15 |
| 11/14/2014 | $9,692.60 |
| 11/14/2014 | $592.63 |
| 11/21/2014 | $177.25 |
| 12/1/2014 | $21,293.32 |
| 12/1/2014 | $7,566.23 |
| 12/1/2014 | $489.83 |
| 12/12/2014 | $168.25 |
| 12/15/2014 | $21,052.65 |
| 12/15/2014 | $6,147.02 |
| 12/15/2014 | $302.33 |
| 12/26/2014 | $168.25 |
| 12/31/2014 | $23,006.96 |
| 12/31/2014 | $7,100.42 |
| 1/2/2015 | $302.33 |
| 1/9/2015 | $166.00 |
| 1/16/2015 | $27,338.42 |
| 1/16/2015 | $9,649.82 |
| 1/23/2015 | $161.50 |
| 1/27/2015 | $839.50 |
| 1/30/2015 | $6,057.56 |
| 2/12/2015 | $18,612.74 |
| 2/2/2015 | $302.33 |
| 2/6/2015 | $157.00 |
| 2/13/2015 | $7,545.44 |
| 2/17/2015 | $18,951.92 |
| 2/17/2015 | $285.00 |
| 2/20/2015 | $152.50 |
| 2/27/2015 | $7,690.01 |
| 2/27/2015 | $285.00 |
| 3/2/2015 | $19,235.81 |
| 3/6/2015 | $159.25 |
| 3/13/2015 | $7,916.74 |
| 3/16/2015 | $19,133.83 |
| 3/16/2015 | $285.00 |
| 3/20/2015 | $168.25 |
| 4/1/2015 | $23,420.18 |
| 4/1/2015 | $8,852.99 |

# EXHIBIT G

## TRANSFERS TO EMPLOYEES THROUGH ADP ACCOUNT ENDING IN XXXX-5268

| Date of Transfer | Amount |
|---|---|
| 4/2/2015 | $285.00 |
| 4/10/2015 | $187.53 |
| 4/15/2015 | $28,901.98 |
| 4/15/2015 | $11,521.00 |
| 4/15/2015 | $285.00 |
| 4/22/2015 | $52.57 |
| 4/24/2015 | $201.63 |
| 5/1/2015 | $30,479.57 |
| 5/1/2015 | $12,598.54 |
| 5/1/2015 | $285.00 |
| 5/8/2015 | $215.73 |
| 5/15/2015 | $29,283.17 |
| 5/15/2015 | $10,971.93 |
| 5/15/2015 | $432.00 |
| 5/22/2015 | $234.53 |
| 5/29/2015 | $7.00 |
| 6/1/2015 | $31,634.78 |
| 6/1/2015 | $11,410.53 |
| 6/1/2015 | $540.30 |
| 6/12/2015 | $218.08 |
| 6/16/2015 | $12,161.16 |
| 6/16/2015 | $1,308.47 |
| 6/26/2015 | $229.78 |
| 6/30/2015 | $3,982.34 |
| 7/1/2015 | $35,631.75 |
| 7/1/2015 | $13,025.09 |
| 7/1/2015 | $1,308.47 |
| 7/15/2015 | $40,191.88 |
| 7/15/2015 | $13,868.74 |
| 7/15/2015 | $1,308.47 |
| 7/24/2015 | $222.78 |
| 7/31/2016 | $36,163.99 |
| 7/31/2015 | $12,436.16 |
| 7/31/2015 | $1,308.47 |
| 8/7/2015 | $239.23 |
| 8/14/2015 | $44,756.53 |
| 8/14/2015 | $15,525.85 |
| 8/14/2015 | $651.17 |
| 8/21/2015 | $255.68 |
| 9/15/2015 | $39,494.37 |

# EXHIBIT G

## TRANSFERS TO EMPLOYEES THROUGH ADP ACCOUNT ENDING IN XXXX-5268

| Date of Transfer | Amount |
|---|---|
| 9/15/2015 | $25,991.05 |
| 9/15/2015 | $1,306.80 |
| 10/1/2015 | $37,639.80 |
| 10/1/2015 | $12,105.33 |
| 10/1/2015 | $739.64 |
| 10/15/2015 | $35,927.31 |
| 10/15/2015 | $27,746.41 |
| 10/15/2015 | $757.73 |
| 10/21/2015 | $14.50 |
| 10/23/2015 | $213.38 |
| 10/30/2015 | $32,590.07 |
| 10/30/2015 | $10,091.40 |
| 10/30/2015 | $895.74 |
| 11/6/2015 | $211.03 |
| 11/13/2015 | $26,851.89 |
| 11/13/2015 | $8,723.74 |
| 11/13/2015 | $1,346.50 |
| 11/13/2015 | $498.69 |
| 11/20/2015 | $216.33 |
| 12/1/2015 | $25,652.71 |
| 12/1/2015 | $8,366.69 |
| 12/1/2015 | $1,534.70 |
| 12/11/2015 | $192.23 |
| 12/15/2015 | $27,133.98 |
| 12/15/2015 | $8,730.63 |
| 12/15/2015 | $1,436.66 |
| 12/28/2015 | $192.23 |
| 12/31/2015 | $29,224.63 |
| 12/31/2015 | $9,722.95 |
| 12/31/2015 | $1,360.12 |
| 1/8/2016 | $189.88 |
| 1/15/2016 | $39,935.44 |
| 1/15/2016 | $14,292.97 |
| 1/15/2016 | $1,366.06 |
| 1/19/2016 | $895.50 |
| 2/2/2016 | $25,481.30 |
| 2/2/2016 | $8,834.05 |
| 2/2/2016 | $1,196.75 |
| 2/3/2016 | $64.93 |
| 2/11/2016 | $267.29 |

# EXHIBIT G

## TRANSFERS TO EMPLOYEES THROUGH ADP ACCOUNT ENDING IN XXXX-5268

| Date of Transfer | Amount |
|---|---|
| 2/12/2016 | $29,471.16 |
| 2/12/2016 | $13,271.47 |
| 2/12/2016 | $1,364.13 |
| 2/12/2016 | $178.13 |
| 2/12/2016 | $61.10 |
| 2/17/2016 | $465.79 |
| 2/19/2016 | $203.98 |
| 3/1/2016 | $30,936.74 |
| 3/1/2016 | $10,964.95 |
| 3/1/2016 | $1,215.90 |
| 3/11/2016 | $198.28 |
| 3/15/2016 | $31,748.42 |
| 3/15/2016 | $10,703.26 |
| 3/15/2016 | $1,064.79 |
| 3/25/2016 | $192.23 |
| 4/1/2016 | $33,222.35 |
| 4/1/2016 | $11,561.90 |
| 4/1/2016 | $962.82 |
| 4/5/2016 | $63.00 |
| 4/8/2016 | $239.49 |
| 4/15/2016 | $41,018.21 |
| 4/15/2016 | $15,953.01 |
| 4/15/2016 | $937.19 |
| 4/21/2016 | $36.71 |
| 4/22/2016 | $249.29 |
| 4/29/2016 | $34,607.34 |
| 4/29/2016 | $11,177.52 |
| 4/29/2016 | $1,304.94 |
| 5/6/2016 | $237.04 |
| 5/13/2016 | $34,358.15 |
| 5/13/2016 | $11,559.40 |
| 5/13/2016 | $1,364.17 |
| 5/20/2016 | $229.69 |
| 6/1/2016 | $37,695.01 |
| 6/1/2016 | $12,780.14 |
| 6/1/2016 | $1,360.12 |
| 6/10/2016 | $234.59 |
| 6/15/2016 | $44,280.51 |
| 6/15/2016 | $14,733.98 |
| 6/15/2016 | $1,317.24 |

# EXHIBIT G

## TRANSFERS TO EMPLOYEES THROUGH ADP ACCOUNT ENDING IN XXXX-5268

| Date of Transfer | Amount |
|---|---|
| 6/24/2016 | $266.44 |
| 7/1/2016 | $42,206.50 |
| 7/1/2016 | $14,016.85 |
| 7/1/2016 | $1,360.76 |
| 7/8/2016 | $263.99 |
| 7/14/2016 | $199.38 |
| 7/15/2016 | $37,750.99 |
| 7/15/2016 | $13,497.70 |
| 7/15/2016 | $1,131.23 |
| 7/22/2016 | $244.39 |
| 8/1/2016 | $39,960.67 |
| 8/1/2016 | $13,728.51 |
| 8/1/2016 | $932.21 |
| 8/12/2016 | $239.49 |
| 8/15/2016 | $41,047.54 |
| 8/15/2016 | $14,326.57 |
| 8/15/2016 | $1,162.09 |
| 8/26/2016 | $259.09 |
| 8/30/2016 | $541.14 |
| 9/1/2016 | $39,445.62 |
| 9/1/2016 | $13,872.27 |
| 9/1/2016 | $1,112.86 |
| 9/9/2016 | $268.89 |
| 9/15/2016 | $42,422.55 |
| 9/15/2016 | $14,558.24 |
| 9/15/2016 | $1,227.63 |
| 9/23/2016 | $256.64 |
| 9/29/2016 | $38,609.52 |
| 9/29/2016 | $12,950.13 |
| 9/30/2016 | $1,102.83 |
| 10/7/2016 | $232.14 |
| 10/14/2016 | $39,398.27 |
| 10/14/2016 | $13,031.32 |
| 10/14/2016 | $1,253.50 |
| 10/21/2016 | $222.34 |
| 11/1/2016 | $34,880.83 |
| 11/1/2016 | $11,132.27 |
| 11/1/2016 | $1,050.33 |
| 11/14/2016 | $217.44 |
| 11/15/2016 | $33,692.27 |

# EXHIBIT G

## TRANSFERS TO EMPLOYEES THROUGH ADP ACCOUNT ENDING IN XXXX-5268

| Date of Transfer | Amount |
|---|---|
| 11/15/2016 | $10,833.81 |
| 11/15/2016 | $1,200.93 |
| 11/25/2016 | $207.64 |
| 12/1/2016 | $32,064.14 |
| 12/1/2016 | $10,246.47 |
| 12/1/2016 | $1,065.95 |
| 12/9/2016 | $207.64 |
| 12/15/2016 | $29,729.09 |
| 12/15/2016 | $9,367.69 |
| 12/15/2016 | $1,162.97 |
| 12/23/2016 | $202.74 |
| 12/30/2016 | $26,678.87 |
| 12/30/2016 | $9,271.05 |
| 12/30/2016 | $1,080.03 |
| 1/6/2017 | $200.29 |
| 1/13/2017 | $29,335.95 |
| 1/13/2017 | $10,817.82 |
| 1/13/2017 | $1,257.61 |
| 1/20/2017 | $185.59 |
| 1/25/2017 | $1,038.75 |
| 2/1/2017 | $25,068.26 |
| 2/1/2017 | $8,948.44 |
| 2/1/2017 | $1,054.29 |
| 2/10/2017 | $183.14 |
| 2/15/2017 | $25,669.38 |
| 2/15/2017 | $9,483.96 |
| 2/15/2017 | $1,347.96 |
| 2/24/2017 | $190.49 |
| 3/1/2017 | $28,512.39 |
| 3/1/2017 | $9,375.45 |
| 3/1/2017 | $1,044.31 |
| 3/2/2017 | $184.70 |
| 3/10/2017 | $188.04 |
| 3/15/2017 | $28,332.93 |
| 3/15/2017 | $10,007.86 |
| 3/15/2017 | $1,097.07 |
| 3/24/2017 | $212.54 |
| 3/31/2017 | $31,369.92 |
| 3/31/2017 | $10,145.19 |
| 3/31/2017 | $960.91 |

# EXHIBIT G

## TRANSFERS TO EMPLOYEES THROUGH ADP ACCOUNT ENDING IN XXXX-5268

| Date of Transfer | Amount |
|---|---|
| 4/7/2017 | $2,222.41 |
| 4/14/2017 | $33,069.11 |
| 4/14/2017 | $10,548.40 |
| 4/14/2017 | $1,065.37 |
| 4/21/2017 | $224.95 |
| 5/1/2017 | $34,067.10 |
| 5/1/2017 | $10,621.07 |
| 5/1/2017 | $1,039.73 |
| 5/12/2017 | $222.41 |
| 5/15/2017 | $36,552.92 |
| 5/15/2017 | $11,399.71 |
| 5/15/2017 | $1,128.28 |
| 5/26/2017 | $224.95 |
| 6/1/2017 | $38,264.74 |
| 6/1/2017 | $11,992.48 |
| 6/1/2017 | $975.06 |
| 6/9/2017 | $237.62 |
| 6/15/2017 | $49,438.28 |
| 6/15/2017 | $12,423.23 |
| 6/15/2017 | $1,029.20 |
| 6/23/2017 | $242.69 |
| 6/30/2017 | $41,692.04 |
| 6/30/2017 | $12,216.15 |
| 6/30/2017 | $910.40 |
| 7/7/2017 | $329.16 |
| 7/7/2017 | $262.96 |
| 7/14/2017 | $42,640.51 |
| 7/14/2017 | $13,452.16 |
| 7/14/2017 | $989.13 |
| 7/21/2017 | $262.96 |
| 8/1/2017 | $40,411.23 |
| 8/1/2017 | $13,248.90 |
| 8/1/2017 | $1,322.50 |
| 8/2/2017 | $15.30 |
| 8/11/2017 | $257.89 |
| 8/15/2017 | $47,132.64 |
| 8/15/2017 | $14,630.65 |
| 8/15/2017 | $1,382.05 |
| 8/25/2017 | $268.03 |
| 9/1/2017 | $40,344.16 |

# EXHIBIT G

## TRANSFERS TO EMPLOYEES THROUGH ADP ACCOUNT ENDING IN XXXX-5268

| Date of Transfer | Amount |
|---|---|
| 9/1/2017 | $13,140.48 |
| 9/1/2017 | $1,250.50 |
| 9/8/2017 | $252.82 |
| 9/15/2017 | $44,255.66 |
| 9/15/2017 | $13,451.93 |
| 9/15/2017 | $1,237.13 |
| 9/22/2017 | $237.62 |
| 9/29/2017 | $37,253.61 |
| 9/29/2017 | $11,428.47 |
| 9/29/2017 | $813.50 |
| 10/6/2017 | $219.88 |
| 10/13/2017 | $30,536.86 |
| 10/13/2017 | $9,949.51 |
| 10/13/2017 | $1,150.00 |
| 10/20/2017 | $204.67 |
| 11/1/2017 | $34,385.59 |
| 11/1/2017 | $10,840.66 |
| 11/1/2017 | $940.00 |
| 11/10/2017 | $227.48 |
| 11/15/2017 | $30,504.23 |
| 11/15/2017 | $9,518.21 |
| 11/15/2017 | $1,015.00 |
| 11/24/2017 | $217.34 |
| 12/1/2017 | $30,639.73 |
| 12/1/2017 | $9,678.23 |
| 12/1/2017 | $785.00 |
| 12/8/2017 | $199.60 |
| 12/15/2017 | $26,796.36 |
| 12/15/2017 | $9,044.51 |
| 12/15/2017 | $880.91 |
| 12/22/2017 | $197.07 |
| 12/29/2017 | $25,233.93 |
| 12/29/2017 | $8,137.50 |
| 12/29/2017 | $816.62 |
| 1/5/2018 | $189.46 |
| 1/12/2016 | $22,715.12 |
| 1/12/2016 | $8,236.59 |
| 1/12/2016 | $855.54 |
| 1/19/2018 | $179.32 |
| 1/24/2018 | $986.45 |

# EXHIBIT G

## TRANSFERS TO EMPLOYEES THROUGH
## ADP ACCOUNT ENDING IN XXXX-5268

| Date of Transfer | Amount |
|---|---|
| 2/1/2018 | $20,433.20 |
| 2/1/2018 | $6,737.36 |
| 2/1/2018 | $650.00 |
| 2/9/2018 | $174.25 |
| 2/15/2018 | $20,232.90 |
| 2/15/2018 | $6,963.15 |
| 2/15/2018 | $854.74 |
| 2/23/2018 | $159.05 |
| 3/1/2018 | $23,184.05 |
| 3/1/2018 | $7,803.67 |
| 3/1/2018 | $650.00 |
| 3/9/2018 | $174.25 |
| 3/15/2018 | $21,401.41 |
| 3/15/2018 | $7,092.04 |
| 3/15/2018 | $720.20 |
| 3/23/2018 | $181.86 |
| 3/30/2018 | $20,958.16 |
| 3/30/2018 | $7,000.50 |
| 3/30/2018 | $668.24 |
| 4/6/2018 | $198.56 |
| 4/13/2018 | $20,985.10 |
| 4/13/2018 | $7,247.99 |
| 4/13/2018 | $718.13 |
| 4/20/2018 | $182.84 |
| 5/1/2018 | $22,164.43 |
| 5/1/2018 | $6,852.23 |
| 5/1/2018 | $648.35 |
| 5/11/2018 | $193.32 |
| 5/15/2018 | $22,962.01 |
| 5/15/2018 | $7,241.91 |
| 5/15/2018 | $803.71 |
| 5/25/2018 | $193.32 |
| 6/1/2018 | $26,000.82 |
| 6/1/2018 | $7,655.88 |
| 6/1/2018 | $732.29 |
| 6/8/2018 | $188.08 |
| 6/15/2015 | $26,234.16 |
| 6/15/2015 | $8,374.22 |
| 6/15/2015 | $789.65 |
| 6/22/2018 | $201.18 |

# EXHIBIT G

## TRANSFERS TO EMPLOYEES THROUGH ADP ACCOUNT ENDING IN XXXX-5268

| Date of Transfer | Amount |
|---|---|
| 6/29/2018 | $27,460.45 |
| 6/29/2018 | $8,874.06 |
| 6/29/2018 | $741.50 |
| 7/6/2018 | $206.42 |
| 7/13/2018 | $27,555.56 |
| 7/13/2018 | $9,050.61 |
| 7/13/2018 | $1,008.81 |
| 7/20/2018 | $211.66 |
| 8/1/2018 | $27,153.76 |
| 8/1/2018 | $8,004.19 |
| 8/1/2018 | $720.47 |
| 8/1/2018 | $30.34 |
| 8/10/2018 | $206.42 |
| 8/15/2018 | $26,250.40 |
| 8/15/2018 | $8,837.04 |
| 8/15/2018 | $853.05 |
| 8/24/2018 | $201.18 |
| 8/31/2018 | $25,775.90 |
| 8/31/2018 | $7,802.03 |
| 8/31/2018 | $738.50 |
| 9/7/2018 | $201.18 |
| 9/14/2018 | $30,153.87 |
| 9/14/2018 | $9,005.07 |
| 9/14/2018 | $1,001.70 |
| 9/21/2018 | $203.80 |
| 10/2/2018 | $8,061.00 |
| 10/2/2018 | $810.58 |
| 10/2/2018 | $33.96 |
| 10/12/2018 | $35.00 |
| 10/15/2018 | $29,529.61 |
| 10/15/2018 | $8,345.35 |
| 10/15/2018 | $783.46 |
| 10/26/2018 | $206.42 |
| 10/30/2018 | $709.92 |
| 11/1/2018 | $24,638.54 |
| 11/1/2018 | $7,204.60 |
| 11/1/2018 | $813.50 |
| 11/9/2018 | $203.80 |
|  |  |
| Total | $4,047,911.67 |

# EXHIBIT H

## Transfers to American Express
## Account Ending in 3497

| Date of Transfer | Amount | ID Number | Description |
|---|---|---|---|
| 11/13/2014 | $18,219.90 | W2700 | ACH Payment |
| 11/21/2014 | $99,857.28 | W8360 | ACH Payment |
| 12/12/2014 | $21,075.60 | W8580 | ACH Payment |
| 12/29/2014 | $74,219.50 | W1328 | ACH Payment |
| 1/12/2015 | $29,620.07 | W9200 | ACH Payment |
| 1/25/2015 | $43,866.35 | W1928 | ACH Payment |
| 2/13/2015 | $36,165.90 | W1952 | ACH Payment |
| 2/23/2015 | $46,867.90 | W4034 | ACH Payment |
| 3/11/2015 | $33,814.39 | W7562 | ACH Payment |
| 3/26/2015 | $62,044.68 | W9650 | ACH Payment |
| 4/14/2015 | $31,038.28 | W8590 | ACH Payment |
| 4/29/2015 | $81,249.29 | W8060 | ACH Payment |
| 5/14/2015 | $46,059.22 | W7430 | ACH Payment |
| 5/26/2015 | $99,967.36 | W1348 | ACH Payment |
| 6/12/2015 | $60,494.47 | W9392 | ACH Payment |
| 6/19/2015 | $114,838.97 | W6860 | ACH Payment |
| 7/20/2015 | $39,312.32 | W9168 | ACH Payment |
| 7/29/2015 | $83,103.25 | W4392 | ACH Payment |
| 8/11/2015 | $45,229.40 | W0166 | ACH Payment |
| 8/26/2015 | $134,832.06 | W3866 | ACH Payment |
| 9/11/2015 | $38,512.78 | W8436 | ACH Payment |
| 9/30/2015 | $136,312.89 | W1908 | ACH Payment |
| 10/14/2015 | $37,463.55 | W6694 | ACH Payment |
| 11/9/2015 | $102,543.91 | W2254 | ACH Payment |
| 11/19/2015 | $44,002.11 | W2762 | ACH Payment |
| 12/4/2015 | $102,336.67 | W1070 | ACH Payment |
| 12/28/2015 | $22,004.07 | W3030 | ACH Payment |
| 12/29/2015 | $268.00 | W4110 | ACH Payment |
| 1/19/2016 | $70,000.00 | W2058 | ACH Payment |
| 1/29/2016 | $44,159.58 | W3784 | ACH Payment |
| 1/29/2016 | $8,304.54 | W6640 | ACH Payment |
| 2/5/2016 | $62,369.55 | W4876 | ACH Payment |
| 2/19/2020 | $40,000.00 | W4210 | ACH Payment |
| 2/19/2016 | $37,423.82 | W3432 | ACH Payment |
| 3/11/2016 | $43,586.56 | W9844 | ACH Payment |
| 3/17/2016 | $44,212.62 | W1936 | ACH Payment |
| 3/17/2016 | $15,670.42 | W0712 | ACH Payment |
| 4/12/2016 | $67,215.53 | W0190 | ACH Payment |

# EXHIBIT H

## Transfers to American Express
## Account Ending in 3497

| Date of Transfer | Amount | ID Number | Description |
|---|---|---|---|
| 4/12/2016 | $51,413.87 | W0974 | ACH Payment |
| 4/26/2016 | $29,961.13 | W5840 | ACH Payment |
| 5/6/2016 | $50,000.00 | W3650 | ACH Payment |
| 5/16/2016 | $74,770.10 | W6516 | ACH Payment |
| 6/13/2016 | $69,585.15 | W6780 | ACH Payment |
| 6/27/2016 | $45,000.00 | W6790 | ACH Payment |
| 7/6/2016 | $140,355.63 | W6704 | ACH Payment |
| 7/6/2016 | $100,000.00 | W7594 | ACH Payment |
| 7/6/2016 | $50,000.00 | W9638 | ACH Payment |
| 7/6/2016 | $2,358.36 | W8514 | ACH Payment |
| 8/15/2016 | $196,219.46 | W5338 | ACH Payment |
| 8/29/2016 | $59,813.30 | W0114 | ACH Payment |
| 9/27/2016 | $127,461.95 | W9278 | ACH Payment |
| 10/19/2016 | $35,884.16 | W5606 | ACH Payment |
| 11/3/2016 | $161,688.20 | W2644 | ACH Payment |
| 11/17/2016 | $32,649.91 | W4424 | ACH Payment |
| 11/30/2016 | $93,632.24 | W9738 | ACH Payment |
| 12/9/2016 | $38,122.21 | W5820 | ACH Payment |
| 1/4/2017 | $90,467.58 | W7998 | ACH Payment |
| 1/27/2017 | $24,886.50 | W0192 | ACH Payment |
| 2/10/2017 | $75,811.90 | W1300 | ACH Payment |
| 2/28/2017 | $38,540.56 | W0900 | ACH Payment |
| 3/6/2017 | $90,232.58 | W5622 | ACH Payment |
| 4/5/2017 | $113,409.83 | W8176 | ACH Payment |
| 4/25/2017 | $109,592.72 | W7436 | ACH Payment |
| 4/25/2017 | $30,000.00 | W6340 | ACH Payment |
| 4/25/2017 | $15,729.48 | W1344 | ACH Payment |
| 5/19/2017 | $156,554.35 | W6758 | ACH Payment |
| 5/31/2017 | $33,057.96 | W0620 | ACH Payment |
| 7/10/2017 | $172,845.18 | W1880 | ACH Payment |
| 7/27/2017 | $21,393.30 | W6676 | ACH Payment |
| 7/28/2017 | $183,551.33 | W4136 | ACH Payment |
| 8/18/2017 | $32,614.41 | W8724 | ACH Payment |
| 9/8/2017 | $175,612.84 | W6704 | ACH Payment |
| 9/21/2017 | $27,339.87 | W0636 | ACH Payment |
| 10/10/2017 | $138,403.43 | W2192 | ACH Payment |
| 11/7/2017 | $110,242.77 | W6282 | ACH Payment |
| 11/7/2017 | $10,200.38 | W7106 | ACH Payment |

# EXHIBIT H

## Transfers to American Express
## Account Ending in 3497

| Date of Transfer | Amount | ID Number | Description |
|---|---|---|---|
| 11/21/2017 | $14,745.99 | W1538 | ACH Payment |
| 11/21/2017 | $7,451.48 | W6730 | ACH Payment |
| 11/29/2017 | $46,165.45 | W2064 | ACH Payment |
| 12/8/2017 | $97,019.08 | W1288 | ACH Payment |
| 1/10/2018 | $52,142.42 | W4988 | ACH Payment |
| 1/26/2018 | $13,205.64 | W2794 | ACH Payment |
| 2/9/2018 | $51,240.23 | W8266 | ACH Payment |
| 2/22/2018 | $8,578.81 | W4022 | ACH Payment |
| 3/9/2018 | $52,472.27 | W5050 | ACH Payment |
| 3/9/2018 | $11,241.28 | W0954 | ACH Payment |
| 3/23/2018 | $24,404.30 | W0494 | ACH Payment |
| 4/2/2018 | $13,898.59 | W0584 | ACH Payment |
| 5/10/2018 | $53,718.97 | W4298 | ACH Payment |
| 5/17/2018 | $8,452.72 | W1706 | ACH Payment |
| 6/8/2018 | $52,181.55 | W0864 | ACH Payment |
| 6/22/2018 | $10,080.44 | W2158 | ACH Payment |
| 7/6/2018 | $75,280.22 | W2376 | ACH Payment |
| 7/27/2018 | $9,791.19 | W1080 | ACH Payment |
| 8/10/2018 | $91,139.14 | W3014 | ACH Payment |
| 8/24/2018 | $10,247.73 | W5826 | ACH Payment |
| 8/31/2018 | $74,375.37 | W3202 | ACH Payment |
| 9/28/2018 | $81,021.38 | W1842 | ACH Payment |
| 9/28/2018 | $6,713.94 | W4882 | ACH Payment |
| 10/26/2018 | $6,413.40 | W3770 | ACH Payment |
| **TOTAL** | $5,999,647.02 | | |

# EXHIBIT H

## Transfers to Chase Credit Card
## Account Ending in 9224

| Date of Transfer | Amount | ID Number | Description |
|---|---|---|---|
| 11/10/2014 | $24,610.60 | | |
| 11/14/2014 | $21,934.20 | | |
| 11/24/2014 | $24,138.60 | | |
| 12/3/2014 | $15,528.70 | | |
| 12/11/2014 | $16,671.90 | | |
| 12/18/2014 | $23,881.40 | | |
| 12/30/2014 | $24,922.40 | | |
| 1/16/2015 | $23,147.78 | | |
| 1/28/2015 | $22,294.64 | | |
| 2/5/2015 | $16,187.90 | | |
| 2/12/2015 | $16,804.55 | | |
| 2/18/2015 | $14,932.60 | | |
| 2/24/2015 | $25,453.12 | | |
| 3/3/2015 | $7,221.10 | | |
| 3/4/2015 | $18,749.10 | | |
| 3/10/2015 | $14,083.25 | | |
| 3/16/2015 | $19,855.41 | | |
| 3/20/2015 | $61,593.43 | | |
| 4/3/2015 | $79,498.42 | | |
| 4/20/2015 | $52,285.98 | | |
| 5/4/2015 | $18,512.54 | | |
| 5/6/2015 | $54,388.54 | | |
| 5/7/2015 | $359.80 | | |
| 5/18/2015 | $90,000.00 | | |
| 5/20/2015 | $25,618.72 | | |
| 5/26/2015 | $18,045.66 | | |
| 6/1/2015 | $48,180.70 | | |
| 6/8/2015 | $43,135.65 | | |
| 6/11/2015 | $40,409.81 | | |
| 6/18/2015 | $46,904.00 | | |
| 6/26/2015 | $36,472.63 | | |
| 7/1/2015 | $37,488.16 | | |
| 7/3/2015 | $40,000.00 | | |
| 7/9/2015 | $40,000.00 | | |
| 7/15/2015 | $30,000.00 | | |
| 7/20/2015 | $15,865.09 | | |
| 7/21/2015 | $16,952.88 | | |
| 7/23/2015 | $35,907.81 | | |
| 7/29/2015 | $25,944.45 | | |
| 7/30/2015 | $324.46 | | |
| 8/3/2015 | $42,348.31 | | |
| 8/7/2015 | $37,064.04 | | |

# EXHIBIT H

## Transfers to Chase Credit Card
## Account Ending in 9224

| Date of Transfer | Amount | ID Number | Description |
|---|---|---|---|
| 8/12/2015 | $37,757.41 | | |
| 8/17/2015 | $30,000.00 | | |
| 8/19/2015 | $50,000.00 | | |
| 8/20/2015 | $5,486.11 | | |
| 8/25/2015 | $38,506.36 | | |
| 9/1/2015 | $58,546.10 | | |
| 9/8/2015 | $30,000.00 | | |
| 9/14/2015 | $20,592.11 | | |
| 9/18/2015 | $45,870.97 | | |
| 9/22/2015 | $50,714.53 | | |
| 10/1/2015 | $47,460.11 | | |
| 10/7/2015 | $59,565.37 | | |
| 10/13/2015 | $38,160.95 | | |
| 10/19/2015 | $30,000.00 | 2388486623 | Epay |
| 10/23/2015 | $20,223.86 | 2393539779 | Epay |
| 10/28/2015 | $23,679.63 | 2398520800 | Epay |
| 11/2/2015 | $20,869.48 | 2402158033 | Epay |
| 11/9/2015 | $32,249.11 | 2410555920 | EPay |
| 11/20/2015 | $8,910.27 | 2424072612 | EPay |
| 11/24/2015 | $14,930.00 | 2428492704 | EPay |
| 12/7/2015 | $45,668.19 | 2441539974 | EPay |
| 12/9/2015 | $15,659.38 | 2445115475 | EPay |
| 12/21/2015 | $31,727.55 | 2458078370 | EPay |
| 1/14/2016 | $16,330.43 | 2487751750 | EPay |
| 1/14/2016 | $1,000.00 | 2487651637 | EPay |
| 1/20/2016 | $50,000.00 | 2493934431 | Epay |
| 1/22/2016 | $50,000.00 | 2503473267 | EPay |
| 2/8/2016 | $62,369.55 | 2513772609 | EPay |
| 2/29/2016 | $19,432.44 | 2537748804 | EPay |
| 3/14/2016 | $30,000.00 | 2555384498 | Epay |
| 3/18/2016 | $15,000.00 | 2562188774 | EPay |
| 4/4/2016 | $23,000.00 | 2577565851 | EPay |
| 4/8/2016 | $30,000.00 | 2584931901 | Epay |
| 4/13/2016 | $30,000.00 | 2590512528 | EPay |
| 4/14/2016 | $3,520.00 | 2590613099 | EPay |
| 4/20/2016 | $50,000.00 | 2598861337 | EPay |
| 5/2/2016 | $75,000.00 | 2609999018 | EPay |
| 5/5/2016 | $40,000.00 | 2617070219 | EPay |
| 5/16/2016 | $50,000.00 | 2627626076 | EPay |
| 5/27/2016 | $80,000.00 | 2642020953 | EPay |
| 6/14/2016 | $75,000.00 | 2662891031 | EPay |
| 6/29/2016 | $78,659.07 | 2679962498 | EPay |

# EXHIBIT H

## Transfers to Chase Credit Card
## Account Ending in 9224

| Date of Transfer | Amount | ID Number | Description |
|---|---|---|---|
| 7/11/2016 | $50,000.00 | 2694117694 | EPay |
| 7/12/2016 | $37,140.80 | 2696427279 | EPay |
| 8/1/2016 | $80,000.00 | 2717615531 | Epay |
| 8/15/2016 | $80,000.00 | 2736752008 | EPay |
| 9/6/2016 | $100,000.00 | 2762285722 | Epay |
| 9/23/2016 | $100,000.00 | 2784134277 | Epay |
| 10/17/2016 | $120,000.00 | 2810247810 | EPay |
| 11/7/2016 | $70,000.00 | 2836705366 | EPay |
| 11/25/2016 | $90,000.00 | 2860074196 | EPay |
| 1/5/2017 | $63,938.02 | 2911204987 | EPay |
| 2/15/2017 | $55,017.13 | 2963632642 | EPay |
| 3/9/2017 | $3,783.15 | 2994164608 | EPay |
| 3/17/2017 | $1,100.00 | 3005099461 | EPay |
| 3/27/2017 | $60,000.00 | 3016419544 | EPay |
| 3/31/2017 | $35,000.00 | 3022507268 | EPay |
| 4/21/2017 | $1,875.00 | 3050973304 | EPay |
| 5/2/2017 | $80,000.00 | 3064831041 | EPay |
| 5/22/2017 | $80,000.00 | 3090011308 | EPay |
| 6/12/2017 | $60,000.00 | 3118490537 | EPay |
| 7/3/2017 | $50,000.00 | 3144760310 | EPay |
| 7/19/2017 | $80,000.00 | 3169783154 | EPay |
| 8/7/2017 | $50,000.00 | 3192040263 | EPay |
| 8/21/2017 | $80,000.00 | 3210861960 | EPay |
| 9/11/2017 | $80,000.00 | 3237712286 | Epay |
| 10/3/2017 | $100,000.00 | 3269957552 | EPay |
| 11/8/2017 | $96,520.19 | 3318621268 | EPay |
| 1/8/2018 | $10,000.00 | 3400898094 | EPay |
| 2/20/2018 | $21,421.95 | 3457847247 | EPay |
| 3/12/2018 | $23,000.00 | 3489232691 | EPay |
| 4/13/2018 | $21,000.00 | 3536974844 | EPay |
| 6/4/2018 | $21,714.61 | 3607181555 | EPay |
| 7/9/2018 | $72,215.37 | 3656561188 | EPay |
| 8/20/2018 | $35,000.00 | 3717154460 | Epay |
| 10/1/2018 | $62,778.15 | 3775226793 | EPay |
| 10/29/2018 | $30,000.00 | 3815822726 | EPay |
| 11/7/2018 | $5,552.23 | 3831710804 | EPay |
| **TOTAL** | $4,810,663.91 | | |

# EXHIBIT I

## FALKEN, LLC (d/b/a TRIDENT TECHNOLOGY)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| 1/11/2018 | $ 7,400.00 | 11/13/2014 | $ 10,200.00 |
| 2/1/2018 | $ 7,400.00 | 11/26/2014 | $ 9,941.64 |
| 2/1/2018 | $ 7,400.00 | 12/12/2014 | $ 9,800.00 |
| 2/14/2018 | $ 7,100.00 | 12/30/2014 | $ 9,950.92 |
| 2/28/2018 | $ 7,000.00 | 1/14/2015 | $ 9,000.00 |
| 3/14/2018 | $ 7,000.00 | 1/29/2015 | $ 10,300.00 |
| 3/29/2018 | $ 6,900.00 | 2/12/2015 | $ 9,951.25 |
| 4/12/2018 | $ 7,300.00 | 2/26/2015 | $ 9,700.00 |
| 4/30/2018 | $ 7,100.00 | 3/11/2015 | $ 9,700.00 |
| 5/14/2018 | $ 7,100.00 | 3/30/2015 | $ 9,900.00 |
| 5/31/2018 | $ 7,100.00 | 4/13/2015 | $ 11,900.00 |
| 6/8/2018 | $ 6,900.00 | 4/30/2015 | $ 9,700.00 |
| 6/28/2018 | $ 6,800.00 | 5/12/2015 | $ 9,600.00 |
| 7/12/2018 | $ 7,100.00 | 5/29/2015 | $ 11,700.00 |
| 7/31/2018 | $ 7,300.00 | 6/12/2015 | $ 20,000.00 |
| 8/17/2018 | $ 6,900.00 | 6/29/2015 | $ 13,100.00 |
| 8/30/2018 | $ 7,100.00 | 6/29/2015 | $ 20,000.00 |
| 9/13/2018 | $ 7,000.00 | 7/14/2015 | $ 13,100.00 |
| 9/28/2018 | $ 6,900.00 | 7/29/2015 | $ 12,300.00 |
| 10/12/2018 | $ 7,100.00 | 8/12/2015 | $ 13,000.00 |
| 11/2/2018 | $ 6,900.00 | 8/31/2015 | $ 13,900.00 |
| | | 9/14/2015 | $ 12,100.00 |
| | | 9/22/2015 | $ 11,000.00 |
| | | 10/14/2015 | $ 12,900.00 |
| | | 11/2/2015 | $ 12,100.00 |
| | | 11/17/2015 | $ 11,600.00 |
| | | 12/4/2015 | $ 11,600.00 |
| | | 12/14/2015 | $ 11,200.00 |
| | | 1/7/2016 | $ 10,200.00 |
| | | 1/14/2016 | $ 9,700.00 |
| | | 1/29/2016 | $ 11,600.00 |
| | | 2/11/2016 | $ 10,800.00 |
| | | 2/29/2016 | $ 10,800.00 |
| | | 3/14/2016 | $ 10,800.00 |
| | | 3/31/2016 | $ 10,700.00 |
| | | 4/14/2016 | $ 10,300.00 |
| | | 4/28/2016 | $ 9,500.00 |
| | | 5/12/2016 | $ 9,800.00 |
| | | 5/31/2016 | $ 9,600.00 |
| | | 6/14/2016 | $ 9,700.00 |
| | | 7/1/2016 | $ 11,000.00 |

# EXHIBIT I

## FALKEN, LLC (d/b/a TRIDENT TECHNOLOGY)

| ONE YEAR PREFERENTIAL TRANSFERS 11/08/2017-11/09/2018 | | FRAUDULENT TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|
| **DATE** | **AMOUNT** | **DATE** | **AMOUNT** |
| | | 7/14/2016 | $ 11,500.00 |
| | | 7/29/2016 | $ 11,500.00 |
| | | 8/17/2016 | $ 11,500.00 |
| | | 8/31/2016 | $ 11,400.00 |
| | | 9/14/2016 | $ 11,500.00 |
| | | 1/11/2018 | $ 7,400.00 |
| | | 2/1/2018 | $ 7,400.00 |
| | | 2/1/2018 | $ 7,400.00 |
| | | 2/14/2018 | $ 7,100.00 |
| | | 2/28/2018 | $ 7,000.00 |
| | | 3/14/2018 | $ 7,000.00 |
| | | 3/29/2018 | $ 6,900.00 |
| | | 4/12/2018 | $ 7,300.00 |
| | | 4/30/2018 | $ 7,100.00 |
| | | 5/14/2018 | $ 7,100.00 |
| | | 5/31/2018 | $ 7,100.00 |
| | | 6/8/2018 | $ 6,900.00 |
| | | 6/28/2018 | $ 6,800.00 |
| | | 7/12/2018 | $ 7,100.00 |
| | | 7/31/2018 | $ 7,300.00 |
| | | 8/17/2018 | $ 6,900.00 |
| | | 8/30/2018 | $ 7,100.00 |
| | | 9/13/2018 | $ 7,000.00 |
| | | 9/28/2018 | $ 6,900.00 |
| | | 10/12/2018 | $ 7,100.00 |
| | | 11/2/2018 | $ 6,900.00 |
| | | | |
| | | | |
| **TOTAL** | $ 148,800.00 | **TOTAL** | $ 669,943.81 |